EDWARDS, Judge.
Welmon Sharlhorne (a/k/a Welman Sto-vall) was charged with three counts of extortion, violations of LSA-R.S. 14:66. The state dismissed count two, and defendant was tried by jury on counts one and three. The jury convicted defendant of the responsive verdict of attempted extortion on each count. The trial court sentenced defendant to imprisonment at hard labor for a term of seven and one-half years on each count, to run consecutively. Defendant has appealed, urging four assignments of error:
1. The trial court erred in denying defendant’s motion for mistrial;
2. The jury’s verdicts are contrary to the law and the evidence;
3. The trial court erred in denying defendant’s motion for new trial and motion for post-verdict judgment of acquittal;
4. The trial court erred in imposing excessive sentences.
The state’s evidence consisted of the testimony of the alleged victims of the charged offenses, Lita Kimball and Caroline Williams.[1] Defendant presented no evidence.
The record reflects that, at the time each of the alleged offenses occurred, Kimball and Williams each had business establish- *1319 merits in Houma on Prospect Street in Ter-rebonne Parish. Kimball operated a stitchery and framing shop, and Williams operated a dress shop.
The charged offenses related to separate occurrences. In each occurrence, defendant went into the shop of the alleged victim. While inside, he made various statements to the alleged victim. The statements made to Kimball included asking her for money; the statements he made to Williams included asking her for a “donation.” Williams gave defendant ten dollars. Kimball did not give him any money. The statements and circumstances under which the statements were made in each incident are set forth in much greater detail hereinafter.
ASSIGNMENT OF ERROR NO. ONE
By means of this assignment, defendant contends that the trial court erred in denying his motion for mistrial. Defendant argues that the motion should have been granted because of the prosecutor’s reference, during his opening statement, to inadmissible other-crimes evidence.
During the prosecutor’s opening statement, he related that defendant had gone into two separate business establishments managed by ladies and that defendant had told the ladies that he had recently been released from Angola where he had served fifteen years. Thereupon, defense counsel entered an objection and asked for and received the permission of the court for both counsel to approach the bench. Following an off-the-record discussion, the prosecutor resumed his opening statement. After resuming his opening statement, the prosecutor stated that defendant told Caroline Williams and Lita Kimball that he had recently been released from Louisiana State Penitentiary, at Angola, where he had served fifteen years for armed robbery.
Thereafter, during Caroline Williams’s direct examination, the following exchange occurred:
Q. Did he tell you that he had been in prison for twelve (12) years for armed robbery?
A. Yes.
BY MR. CHAMPAGNE:
Objection. I withdraw the objection.
Q. What did you say ma’am?
A. He went through a speel and told me all that, yes, that he had been in prison before. I don’t remember exactly what he said, but he had been in prison and he had just gotten out.
Defense counsel then requested that the jury be removed from the courtroom. After the jury was removed, defense counsel moved for a mistrial on the basis that the prosecutor had stated in his opening statement that both Caroline Williams and Lita Kimball would testify that defendant had been in jail for armed robbery and that Williams’s testimony indicated she did not recall the crime for which defendant had been incarcerated. In amplifying his grounds for the motion for mistrial, defense counsel argued that the reference to an armed robbery was other-crimes evidence and that the state had not given defendant pretrial notice of its intent to introduce such evidence. The trial court noted that the witness’ testimony was not clear. The prosecutor took the position that no pretrial notice was required, since the evidence constituted part of the res gestae. The trial court denied the motion for mistrial without stating any reasons for its ruling.
The jury was returned to the courtroom, and the witness continued her testimony. During her continued testimony, the witness stated that defendant told her that he had been “in jail or Angola or whatever,” but she did not clarify her earlier testimony as to whether defendant had informed her that he had previously been incarcerated for armed robbery. However, following Williams’s testimony, Lita Kimball unequivocally testified that on the day defendant came into her shop he told her he had been incarcerated for armed robbery.
On appeal, defendant argues that, because Williams could not state that defendant had mentioned the crime of armed robbery to her, the prosecutor should not have stated in his opening statement that *1320 defendant had told the alleged victims he had been incarcerated for armed robbery. He maintains that because the prosecutor did mention the prior crime, the court should have granted his motion for a mistrial.
The granting of a mistrial due to the prosecutor’s comment on prior criminal activity during the opening statement is governed by LSA-C.Cr.P. art. 770, which provides in part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* sfc * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial. (emphasis added)
Recently, in the case of State v. Kirkpatrick, 443 So.2d 546 (La.1983), the Louisiana Supreme Court discussed the application of LSA-C.Cr.P. art. 770 in the context of a reference to prior criminal activity during an opening statement. In Kirkpatrick, in response to defendant’s assignment of error involving the prosecutor’s reference to defendant’s prior arrest for arson, the court stated:
An exception to this rule is made if the evidence is substantially relevant to some purpose other than to show that the accused is a bad person, therefore more likely to have committed the crime. The underlying policy of protecting the accused against unfair prejudice dictates that, even though the evidence have an independent relevance, the trial judge must balance all of the pertinent factors to determine whether the probative value of the evidence is outweighed by its prejudicial effect, (citations omitted) (emphasis added)
443 So.2d at 556, 557. The court went on to find that, because the evidence of the arson was necessary to show a connexity with the crime being prosecuted, it was relevant and admissible, and LSA-C.Cr.P. art. 770 did not apply.
In this case, the statement of the defendant, referred to in the prosecutor’s opening statement, was offered to show the coercive nature of the confrontation between the defendant and the victims. As such, it was relevant to demonstrate an essential element of the crime of extortion, that of threat. Because the extreme relevance of the statement outweighed the prejudicial nature of its admission, the trial court was correct in denying the motion for mistrial. Kirkpatrick at 557.
This assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. TWO AND THREE
By means of these assignments, defendant claims that the trial court erred by denying his motion for new trial[2] and motion for post verdict judgment of acquittal. He mentions that the evidence was insufficient to convict him of the offenses of attempted extortion. More specifically, defendant submits that there was insufficient evidence of a threat communicated to either of the alleged victims.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine that the evidence, viewed in the light *1321 most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676, 678 (La.1984); LSA-C.Cr.P. art. 821.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This statutory test" is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
Extortion is defined in LSA-R.S. 14:66, in pertinent part, as follows:
Extortion is the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description. The following kinds of threats shall be sufficient to constitute extortion:
(1) A threat to do any unlawful injury to the person or property of the individual threatened or of any member of his family or of any other person held dear to him;
(2) A threat to accuse the individual threatened or any member of his family or any other person held dear to him of any crime;
(3) A threat to expose or impute any deformity or disgrace to the individual threatened or to any member of his family or to any other person held dear to him;
(4) A threat to expose any secret affecting the individual threatened or any member of his family or any other person held dear to him;
(5) A threat to do any other harm.
An attempt is defined in LSA-R.S. 14:27(A) and (B), in pertinent part, as follows:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt;....
Thus, to be guilty of attempted extortion, a defendant must have a specific intent to communicate a threat to another to thereby obtain anything of value or any acquittance, advantage, or immunity. LSA-R.S. 14:27 and LSA-R.S. 14:66.
LSA-R.S. 14:10(1) defines specific intent as “that state of mind which exists when the circumstances indicate that the offender actively desired tbe prescribed criminal consequences to follow his act or failure to act.” Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982); State v. Perkins, 517 So.2d 314, 316 (La.App. 1st Cir.1987), writ denied, 519 So.2d 141 (La.1988).
COUNT ONE
Lita Kimball testified, in regard to the offense charged in count one, as follows. On November 8,1985, while she was alone in her shop, defendant came into the shop. Defendant, whom she did not know and whom she had never even seen previously, began talking to her. Defendant told her that he had been in jail for a number of years and that he had recently been released from Angola jail. He informed her of “things he had been in jail for” including armed robbery and assault. Defendant told Kimball he needed help and that he wanted her to give him money. When Kimball told defendant that she did not have any money to give him, defendant told her: “[B]ut you don’t understand, I don’t forget those who help me.” Defendant told Kimball he would return, and he *1322 left the shop. Defendant returned to the shop (apparently the next morning). At that time, there were many other people in the shop. When a police car turned on Prospect Street with its sirens activated, defendant got “very fidgety” and left the shop in a hurry. Although Kimball testified that she did not feel threatened by defendant’s appearance, she did state that she “most definitely” felt very much threatened by the defendant. She stated that the defendant did scare her. On the day after defendant’s second appearance at the shop, the matter was reported to the police.
When questioned on direct examination as to whether or not defendant told her or led her to believe what would happen if she did not give him money, Kimball testified that defendant “most definitely” had told her what would happen. When asked to explain her answer, Kimball testified, in pertinent part:
He told me that he had been in jail for a number of years and just gotten out, and that he wanted me to give him money. And that — it was the tone and aggressiveness that he used. He was very specific. He was very well prepared when he came in there. I didn’t even have time to reply to him until he finished his little speech. It was, I have been in jail; I just got out; I want you to give me some money. You know, very specif-ic_ I was petrified. He was very specific, very aggressive, very well prepared. Like I said, I didn’t even have time to answer him until he finished his entire speech. When I told him I didn’t have any money to give him, he said, but you don’t understand, I don’t forget those who help me. I said, “well, it doesn’t matter, I don’t have any money to give you.”
On cross-examination, Kimball testified that defendant never told her in “exact words” that he was going to hurt her but she felt “very much intimidated.” Defendant did not threaten to hurt any close friend of Kimball or any member of her family. He did not “raise his hand to [her],” and he never physically harmed her in any way. He just asked her for some money.
After carefully reviewing all the evidence introduced at trial in regard to count one in the light most favorable to the prosecution, we find that a rational trier of fact could not have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant had the specific intent to communicate a threat to Lita Kimball to thereby obtain anything of value or any acquittance, advantage, or immunity. There was no direct evidence of specific intent, and the circumstances of the transaction and the actions of defendant do not support the inference of such an intent.
The particular deficiency of the state’s proof of specific intent relates to the absence of an intent to communicate a threat of the kind required by LSA-R.S. 14:66. While there is no doubt that defendant intended to obtain money from Kimball and that Kimball felt intimidated, threatened, and scared by defendant, given her testimony as a whole, a rational trier of fact would clearly have had a reasonable doubt that the defendant specifically intended to communicate a threat of the kind set forth in LSA-R.S. 14:66. While Kimball testified that the defendant stated “I don’t forget those who help me,” she in no way testified that the defendant threatened her if she did not give him money. Therefore, we reverse defendant’s conviction and sentence as to count one.
COUNT THREE
Caroline Williams testified, in regard to the offense charged in count three, that on November 8 or 9, 1985, defendant came into her business. She did not know him and had not previously done any business with him. She stated that there were plenty of customers shopping in her store when defendant came into the shop.
Ms. Williams testified that defendant told her that he had been in “jail or Angola” and that he had recently been released. He stated to her that he was trying to get money to get out of town. Defendant asked her if she would give him a “dona *1323 tion.” She initially told defendant that she would not give him one. However, defendant was “forceful” and would not leave her shop. After she declined to give him a “donation,” defendant told her that “something might happen — people that give me money, things don’t happen to their building.” In further testimony, Williams stated that she distinctly remembered that defendant told her that if she gave him money no harm would come to her building. Williams’s main concern was getting defendant out of her store. Williams gave defendant ten dollars and told defendant to leave. Defendant then left her shop.
Viewing the evidence introduced at trial in regard to count three in the light most favorable to the state, we find that any rational trier of fact could have found that the state proved all the elements of extortion beyond a reasonable doubt, to the exclusion of any reasonable hypothesis of innocence. Caroline Williams’s testimony showed that defendant communicated a threat to do harm to her building to thereby obtain something of value, i.e., a “donation,” and that she gave him ten dollars as a result of the threat. Having proved all the elements of the greater offense of extortion, the evidence was clearly sufficient to prove defendant’s guilt of the lesser and included offense of attempted extortion. Thus, there clearly was sufficient evidence to support the jury’s verdict as to count three, and, therefore, we uphold the conviction and sentence as to count three.
ASSIGNMENT OF ERROR NO. FOUR
By means of this assignment, defendant contends that the trial court erred by imposing excessive sentences. Having reversed defendant’s conviction and sentence as to count one, we need only review this assignment in regard to defendant’s sentence in reference to count three.
Article I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of a sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence may be excessive either by reason of its length or because the circumstances warrant a less onerous sentencing alternative. State v. Tate, 506 So.2d 546, 552 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). In other words, a sentence may be both within the statutory limits and constitutionally excessive. Sepulvado, at 767. A sentence is excessive when it is grossly out of proportion to the severity of the offense or nothing more than the needless and purposeless imposition of pain and suffering. To determine whether a penalty is grossly disproportionate to the crime, the court considers the punishment and the crime in light of the harm to society and whether the penalty is so disproportionate as to shock our sense of justice. State v. Bonanno, 384 So.2d 355, 358 (La.1980). Moreover, maximum sentences are appropriately imposed only for the most serious violation of the described offense and for the worst kind of offender. State v. Chaney, 537 So.2d 313, 317 (La.App. 1st Cir.1988), writ denied, 541 So.2d 870 (La.1989). A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
A trial court’s reasons in imposing sentence, as required by LSA-C.Cr.P. art. 894.-1, are an important aid to this court when reviewing a sentence alleged to be excessive. State v. Christy, 509 So.2d 829, 831 (La.App. 1st Cir.), writ denied, 513 So.2d 296 (La.1987). The trial court need not recite the entire checklist found in LSA-C. Cr.P. art. 894.1, however, the record must reflect that the court adequately considered the guidelines. State v. Davis, 448 So.2d 645, 653 (La.1984).
Attempted extortion is punishable by imprisonment at hard labor for a maximum of seven and one-half years. LSA-R.S. 14:27 and LSA-R.S. 14:66. In this case, defendant received the maximum sentence.
At the sentencing hearing, the trial court reviewed the facts pertaining to defendant’s conviction as to count three and defendant’s criminal history. The court noted that defendant was convicted of sim- *1324 pie burglary in 1972 and sentenced to three years with the Department of Corrections for the offense. In April of 1973, after serving one year of his sentence, defendant was paroled. In September of 1973, defendant’s parole was revoked. Thereafter, defendant was convicted of armed robbery and “a crime against nature.” Thus, the trial court concluded that defendant’s conviction constituted his fourth felony conviction.
In articulating further reasons for the sentence, the trial court stated that it felt there was not only an undue risk but a moral certainty that, during any period of suspended or probated sentence, defendant would commit another crime, based on defendant’s previous behavior. The court further stated that defendant was definitely in need of a custodial environment that could best be provided by defendant’s commitment to a correctional institution. The court also noted that a lesser sentence would certainly deprecate the seriousness of the crime in light of defendant’s criminal record.
Although defendant received the maximum term of imprisonment, we do not find the sentence so grossly disproportionate as to shock our sense of justice. Considering the circumstances of the offense, the unusual risk defendant poses to public safety due to his past conduct of repeated criminality, and the reasons for sentencing given by the trial court, we find no abuse of discretion in the sentence imposed. Accordingly, we do not find the sentence imposed in count three to be excessive.
This assignment lacks merit.
CONVICTION AND SENTENCE ON COUNT ONE REVERSED; CONVICTION AND SENTENCE ON COUNT THREE AFFIRMED.

. The only other evidence introduced by the state consisted of state exhibit S-l, a photographic lineup exhibited to Lita Kimball and Caroline Williams, and Houma City Police Officer Eugene Callahan, Jr.’s, testimony in regard to his having prepared the lineup and having exhibited it to Kimball and Williams.

. In brief, defendant additionally argues that his motion for new trial should have been granted on the basis of his argument in assignment of error number one. However, because we have. addressed and found no merit to assignment one, defendant's additional argument is equally without merit.