628 So.2d 63 (1993)
STATE of Louisiana
v.
Alvin DANIELS.
No. 92 KA 2102.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
Rehearing Denied January 12, 1994.
*65 State of Louisiana Asst. Dist. Atty. William Quinn, Amite, for plaintiff-appellee.
Alvin Daniels in pro per.
Before EDWARDS, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
The defendant, Alvin Daniels, was charged by bill of indictment with extortion, a violation of LSA-R.S. 14:66. He pled not guilty and, after trial by jury, was found guilty as charged. He was adjudicated an habitual offender and sentenced to thirty years at hard labor. The defendant has appealed, urging ten assignments of error.
On July 28, 1988, the victim, Edward Bahm, received letters from someone, who was later determined to be the defendant, claiming to be in possession of evidence of who killed the victim's daughter, Donna Bahm, in January of 1988. Initially, the defendant requested $30,000.00 from Mr. Bahm for the information. Mr. Bahm was instructed not to inform the police and to follow the defendant's orders or else he would not be given the evidence. After one failed attempt to obtain the money, the defendant contacted Mr. Bahm again. The defendant informed Mr. Bahm that he did not pick up the money the first time because he knew that he was being watched and because of this Mr. Bahm would have to give him $50,000.00 in exchange for the evidence. The defendant was arrested during his second attempt to pick up the money. After his arrest, the defendant gave the police a voluntary statement in which he admitted to making the phone calls and sending the letters to Mr. Bahm in an attempt to obtain money from him.

ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE:
The defendant contends in his first assignment of error that there was insufficient evidence to convict him of extortion. In his second assignment of error the defendant contends that the state failed to establish that he had the specific intent to commit the crime of extortion. In assignment of error number three, he contends that the trial court erred in denying his motions for post-verdict judgment of acquittal and for a new trial.
The standard of review for the sufficiency of evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La. *66 C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). This Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Polkey, 529 So.2d 474, 476 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989).
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Johnson, 529 So.2d 466, 473 (La.App. 1st Cir.1988), writ denied, 536 So.2d 1233 (La.1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
Extortion is defined in LSA-R.S. 14:66, in pertinent part, as follows:
Extortion is the communication of threats to another with the intention thereby to obtain anything of value or any acquittance, advantage, or immunity of any description. The following kinds of threats shall be sufficient to constitute extortion:
* * * * * *
(5) A threat to do any other harm.[1]
LSA-R.S. 14:10(1) defines specific intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Sharlhorne, 554 So.2d 1317, 1321 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1365 (La.1990).
In the instant case, the victim, Edward Bahm, testified that his daughter, Donna, was killed on January 21, 1988, and that at the time of the instant trial no one had been convicted of killing her. He stated that on July 28, 1988, a letter was found thumbtacked to the pole in front of his house from someone, who was later determined to be the defendant, claiming to have evidence of who killed Donna. Mr. Bahm testified that the letter referred to another letter which previously had been left near the Bahm's driveway. Both letters instructed Mr. Bahm not to call the police and gave detailed information about Donna Bahm and her murder which had not been made public. Mr. Bahm testified that the information contained in the letters could have been known only by someone with knowledge of who killed his daughter.
Mr. Bahm subsequently received a third letter which instructed him to wait by a particular pay telephone in order to receive information about who killed his daughter. The letter stated, "No police. Will be watching." Following several phone calls, Mr. Bahm was instructed to pay the defendant $30,000.00 for information concerning his daughter's murder. Mr. Bahm was told to leave the money at a particular drop point; however, the defendant did not pick up the money.
Subsequently, Mr. Bahm received another letter from the defendant stating that he did not pick up the money because he knew he was being watched. The letter then stated that the price for the information was raised to $50,000.00. Another drop site for the money was arranged, and the defendant subsequently was arrested at the second drop site.
In the letters and the phone calls to Mr. Bahm the defendant informed him that he had all the information that was needed to convict the killers of Mr. Bahm's daughter. The defendant also threatened Mr. Bahm numerous times that, if he did not pay the money, he would not get the information. Specifically, the defendant told Mr. Bahm, "[I]f you don't want to go through with this, if, don't give me nothing. Don't give nothing. Don't do anything. I'm telling you watch (sic) what happen." In a letter to Mr. Bahm, the defendant stated, "I will tell you *67 ... if you follow my demands to the word." In another letter to Mr. Bahm, the defendant threatened that if Mr. Bahm went to the police "you will never know.... If you do something out of order you will never here (sic) from us again." In a phone call to Mr. Bahm, the defendant threatened not to give him the information upon Mr. Bahm's offer of $5,000.00 for the information. In his first letter to Mr. Bahm, the defendant instructed Mr. Bahm what to do if he wanted to "talk about [defendant's] price." The defendant stated that he would tell Mr. Bahm who killed his daughter "if you follow my demands to the word." The defendant further stated in this letter, "I am your only hope. No one else knows but me. You will be watched every step.... only chance you will ever have."
Furthermore, after his arrest, the defendant made a voluntary statement to the police. In this statement, the defendant admitted to writing the letters and making the telephone calls to Mr. Bahm in an attempt to obtain money in exchange for evidence as to who killed Donna Bahm. The defendant claimed in this statement that he did not have any evidence but that he made up the information and guessed the answers to Mr. Bahm's personal questions about Donna.
In his brief to this Court, the defendant does not contest his identity as the person who sent letters and made telephone calls to the victim in an attempt to obtain money for information. However, the defendant contends that his actions do not meet the elements of the crime of extortion because he did not threaten Mr. Bahm. The defendant states that there is "no question" that he was negotiating with Mr. Bahm for a sum of money between $30,000.00 and $50,000.00, but that he did not threaten Mr. Bahm. In support of his argument, the defendant cites State v. Sharlhorne, 554 So.2d 1317 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1365 (La.1990). In Sharlhorne this Court reversed the defendant's conviction in count one for attempted extortion. The defendant had told the victim of that count, "I don't forget those who help me" after asking the victim for money. This Court stated that the defendant did not have the specific intent to communicate a threat. The victim did not testify that the defendant threatened her if she did not give him the money.
In the instant case, the defendant did threaten to cut off communication with the victim and, thus, threaten to withhold from the victim and the state evidence of who murdered Donna Bahm. The defendant specifically told Mr. Bahm that if he did not do what defendant told him, which included giving the defendant an amount of money which ranged from $30,000.00 to $50,000.00, he would not get the information and would never know who killed his daughter. Thus, we find that the defendant specifically intended to communicate a threat to the victim with the intention of gaining something of value. The circumstances indicate that the defendant actively desired the consequences to follow his actions. The defendant's communication to Mr. Bahm was a threat to withhold evidence of crime which was a harm not only to the victim but also to the state. The defendant's threat also constituted a threat to do psychological harm to the victim by withholding information as to who murdered his daughter.
After carefully reviewing all the evidence introduced at the trial in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant had the specific intent to communicate a threat to obtain something of value. Thus, we find these assignments of error to be without merit.

ASSIGNMENT OF ERROR NUMBER FOUR:
The defendant urges as his fourth assignment of error that the elements of the crime were not proven beyond a reasonable doubt. However, in his brief to this Court, the defendant sets forth in this assignment an argument that is beyond the scope of this assignment. He argues that the trial court erred in instructing the jury as to reasonable doubt.
In accordance with the well established jurisprudence of the Louisiana Supreme Court, this Court will not consider *68 arguments which are neither assigned as error nor related to errors patent on the face of the record. See State v. Spears, 350 So.2d 603, 605 n. 1 (La.1977); State v. Overton, 337 So.2d 1201, 1207 (La.1976). In order for this issue to be reviewed on appeal, defendant should have filed this claim as a supplemental assignment of error. State v. Bennett, 517 So.2d 1115, 1121 (La.App. 1st Cir.1987), writ denied, 523 So.2d 1335 (La.1988). The defendant's argument is beyond the scope of his assignment of error and, thus, will not be considered. We find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER FIVE:
In his fifth assignment of error, the defendant contends that the trial court erred in denying his motion for a mistrial.
On October 20, 1989, the defendant made a motion for a mistrial based on a taped statement which was played for and a transcribed copy given to the jury on October 19, 1989, which contained information alluding to the defendant's previous incarceration. In his brief to this Court, he argues that a mistrial should have been granted when the state presented evidence that indicated that the defendant had been incarcerated in Angola.
At the hearing on the defendant's motion to suppress evidence, the state confirmed that it would introduce into evidence the defendant's taped statement to Police Officer Larry Westmoreland. The state pointed out that defense counsel previously had been furnished a copy of the statement and that the defendant agreed that the statement was admissible into evidence on the trial on this matter. Defense counsel confirmed the state's declaration by stating, "That is correct, Your Honor."
At the defendant's trial, prior to playing the statement to the jury, the state offered the taped statement and a transcript of the statement into evidence as S-18. Defense counsel stated, "Defense has no objection." The evidence was admitted, the taped statement was played for the jury, and a written transcription of the statement was distributed to the jury to allow them to follow along with the tape.
The following day the defendant moved for a mistrial because the taped statement contained a reference to other crimes evidence. The section of the taped statement made by the defendant that he now complains of on appeal is as follows, "Alright, now, while I was in uh, Angola over there I was you know studying law."
The trial court denied the defendant's motion for a mistrial. The court reasoned that the defense stipulated previously to the introduction of the entire statement into evidence and that defense counsel had been provided the statement prior to trial. There was no mention in the stipulation of the excision or deletion of any reference to other crimes. Also, the day before the defendant's motion for a mistrial, the statement had been played for the jury and no objection was made by the defendant.
However, the trial court did have the questionable portion of the transcription of the statement retyped for the jury in the event they wanted another look at the transcript. The retyped copy of the statement deleted the reference to the defendant's previous incarceration.
Accordingly, without deciding whether or not the evidence was inadmissible "other crimes" evidence, we find that the defendant waived any error based on this allegation by his failure to move timely for a mistrial or enter a contemporaneous objection. La. C.Cr.P. arts. 770 & 771(2); State v. Sisk, 444 So.2d 315, 316 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1215 (La.1984). Thus, we find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER SIX:
The defendant argues in his sixth assignment of error that the state's closing arguments went beyond the scope of the evidence. He contends that the prosecutor erred by stating that threats were used by the defendant, which he claims misrepresented the truth. He also claims that the prosecutor expressed his personal opinion and put the jurors in the position of the victim which *69 caused them to leave their place as neutral arbitrators and become the victim.
Defense counsel did not object to the state's comments and did not request an admonishment to the jury to disregard the comments. In addition, there was no motion for a mistrial with regard to the prosecutor's comments. The issue as to the propriety of the remarks is not preserved for review where defense counsel makes no objection to the statements either during the argument or after the argument. In such a case, the defendant is deemed to have waived any such error on appeal. State v. Craddock, 435 So.2d 1110, 1121 (La.App. 1st Cir.1983). Furthermore, in his instructions to the jury, the trial judge stated that the statements and arguments made by the attorneys were not to be considered as evidence. Thus, we find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER SEVEN:
In his seventh assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence. However, due to the treatment of assignment of error number eight, we pretermit a discussion of this issue.

ASSIGNMENT OF ERROR NUMBER EIGHT:
The defendant contends in his eighth assignment of error that the trial court erred in failing to advise him of his rights at the habitual offender hearing prior to his stipulation as to his prior conviction.
LSA-R.S. 15:529.1 D(1) provides that upon the filing of a multiple offender bill of information, the trial court shall cause the defendant to be brought before it and "shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true." See State v. Martin, 427 So.2d 1182, 1184-85 (La.1983). In State v. Johnson, 432 So.2d 815, 817 (La.1983), the Louisiana Supreme Court stated that the trial court also is required to advise the accused of his statutory right to remain silent during the habitual offender proceedings.
Even if the defendant's agreement to stipulate to the provisions of a bill charging that he was a second felony offender could be considered a waiver of his right to be informed of the specific allegations of the petition, the trial court nevertheless was required to advise the defendant of his statutory rights and his right to remain silent before requiring him to state his final agreement. Accordingly, we find that the defendant's adjudication and sentence as a habitual offender must be vacated and this matter remanded for further proceedings. See State v. Musacchia, 536 So.2d 608, 611-12 (La.App. 1st Cir.1988). Additionally, upon resentencing the defendant, the court should give the defendant credit for time served as the court failed to include it in the defendant's original sentence. See La.C.Cr.P. art. 880; State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990).

ASSIGNMENT OF ERROR NUMBER NINE:
In his ninth assignment of error, the defendant contends that the trial court erred in allowing the defendant to be billed by a Petition rather than a Bill of Information. He argues that in order to proceed in adjudicating a defendant as a multiple offender he must be so charged by bill of information and not a letter of facts.
A habitual offender bill of information does not charge a new crime but is only a method of increasing the punishment of a second and subsequent felony offender. The document need only inform the accused of his previous felony conviction(s) within the time period set forth in LSA-R.S. 15:529.1. This satisfies the constitutional requirement that the accused shall be informed of the nature and cause of the accusation against him. State v. Donahue, 572 So.2d 255, 261 (La. App. 1st Cir.1990).
The state filed a document titled "Information accusing person of a previous conviction" with the trial court. The document clearly listed the defendant's previous conviction and the state's intention to use the conviction in an attempt to enhance his sentence on the instant conviction. Although not titled as a "Bill of Information", we find this document adequately notifies the defendant of the *70 state's intention to charge him as a habitual offender and the nature and cause of the accusation against him. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN:
The defendant contends in his tenth assignment of error that the trial court erred in not granting a change of venue.
La.C.Cr.P. art. 622 provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
The burden is upon the defendant to prove that there exists such a prejudice in the collective minds of the community that a fair and impartial trial is impossible. State v. Jones, 593 So.2d 1301, 1315 (La.App. 1st Cir.1991), writ denied, 620 So.2d 868 (La.1993). Relevant factors to consider in determining whether to change venue are the nature of the pretrial publicity, the particular degree to which it had circulated in the community, the connection of governmental officials with the release of the publicity, the length of time between the dissemination of the publicity and the trial, the severity and notoriety of the offense, the area from which the jury is to be drawn, other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and any other factor likely to affect the candor and veracity of the prospective jurors on voir dire examination. Although the trial court possesses a broad range of discretion in this area, the reviewing court is required to make an independent evaluation of the facts to determine whether the accused received a fair trial unfettered by outside influences. State v. Jones, 593 So.2d at 1315.
In the defendant's brief to this Court, he contends that the extensive media coverage of the instant crime and of his arrest for the murder of the victim's daughter resulted in prejudice against him in the community, thereby reducing his chance of receiving a fair trial. He argues that the prospective jurors were unable to disassociate the instant crime from his arrest for murder.
At the pretrial hearing on the defendant's motion for change of venue, the trial court deferred a ruling on the motion until after the voir dire examination. After the jury was selected, the trial court denied the motion for change of venue, noting that a fair and impartial jury had been selected without difficulty. The trial court specifically noted that there was a significant amount of publicity surrounding the initial investigation of the death of Mr. Bahm's daughter. The court also noted that there was "some" subsequent publicity concerning the grand jury's actions. However, the trial court stated that all but one of the newspaper stories entered into evidence were published almost one year prior to the commencement of the instant trial. The trial court also stated that it was unable to find any "sort of permeating pattern of involvement in the release of news stories on behalf of the Sheriff's Office."
The trial court found that the publicity surrounding the instant case has not "so permeated the parish as to taint ... the answers of prospective jurors on voir dire and that they would be affected by that so that perhaps they would not answer truthfully...." The trial court stated that thirty-three prospective jurors were examined before twelve jurors and two alternate jurors were selected. Eleven of these potential jurors were excused for cause; however, according to the trial court, seven were excused for reasons unrelated to their knowledge of pretrial publicity.
We find the trial court's ruling denying the defendant's motion for change of venue was not erroneous. Our review of the hearing on the motion for change of venue and the voir dire examination of the prospective jurors as to the pretrial publicity indicates that the *71 defendant was not prejudiced by the denial of the motion. The defendant failed to meet the necessary burden for a change of venue. This assignment of error is without merit.
CONVICTION AFFIRMED; THE HABITUAL OFFENDER ADJUDICATION AND SENTENCE ARE VACATED; AND THE MATTER IS REMANDED FOR RESENTENCING.
NOTES
[1] In the state's answer to the defendant's bill of particulars, it specifies that the state proceeded against defendant under section number five of LSA-R.S. 14:66.