536 So.2d 608 (1988)
STATE of Louisiana
v.
Samuel MUSACCHIA.
No. KA 88 0164.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
*609 William R. Campbell, Jr., New Orleans, for State of La.
Joseph Tosterud, Asst. Dist. Atty., Covington, P. David Carollo, Slidell, for Musacchia.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
Samuel Musacchia was charged by bill of information with burglary (LSA-R.S. 14:62) of the Gulf Welding Equipment Company in Slidell, Louisiana.[1] Defendant pled not guilty. Following trial by jury, defendant was convicted as charged. A habitual offender bill was filed, and defendant was adjudicated a second felony habitual offender. Thereafter, the trial court sentenced defendant to a nine-year term of imprisonment at hard labor.
Defendant brings this appeal, urging five assignments of error:
1. The trial court erred by failing to grant the motion to suppress physical evidence.
2. The trial court erred by failing to grant a mistrial, due to a conversation held between sequestered state witnesses Catherine Locke and Jack Crochet.
3. The sentence imposed is excessive.
4. There exists insufficient evidence to support this conviction.
5. Due to error patent, the conviction and/or sentence should be reversed.
Assignment of error number four is not briefed. It is thereby considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4.

FACTS
During the night of November 5, 1985, a building at the Slidell office of Gulf Welding Equipment Company was burglarized. Some four thousand dollars worth of welding equipment was stolen following the forced entry. Defendant's three-year employment with that company terminated in August of 1985. James Thompson, the company owner, immediately suspected defendant as a possible perpetrator.
Sometime thereafter, officials from the St. Tammany Parish Sheriff's Office notified Hancock County Mississippi Sheriff *610 personnel about the Louisiana burglary. It was thought that some of the stolen items might appear in Hancock County since defendant had a close friend, Jack Crochet, then residing in the Hancock County community of Pearlington.
Delbert Seig, a criminal investigator for the Hancock County Sheriff's Office, testified that, in December of 1985, some three weeks after the instant burglary, he received a tip from an identified citizen that Crochet had a juvenile female residing with him. According to the identified informant, the young female was observed watching lewd movies while spending nights at Crochet's home. Based on this tip, Investigator Seig and Hancock County Deputy Glen Strong traveled to Jack Crochet's house.
According to their testimony, Crochet met the officers on his front porch. After conversing briefly, Crochet spontaneously invited the two men into his house. Defendant and an oriental man were seated in Crochet's living room. Once inside, Seig noticed a bulging duffel bag containing welding equipment. When questioned about the origin of the equipment, Crochet stated that he had bought it from a black man in the "back of town." He then told the officers that they were welcome to take the welding equipment with them.
The welding equipment, valued at approximately four hundred dollars, was subsequently identified by James Thompson as some of the items stolen from his Slidell business. In addition, Catherine Locke, Crochet's former girlfriend, testified at trial that she resided with Crochet, defendant, and a Vietnamese man in a Slidell apartment in November of 1985. She stated that on the night of November 5, 1985, the three men left "to do some business." The three men returned a short time later with welding equipment from Gulf Welding Company. She recalled that Crochet was upset about the quantity of stolen equipment because he felt it would be difficult to dispose of such a large amount of equipment.
Defendant testified at trial, denying any involvement in the instant burglary. He stated that he never lived with Jack Crochet or a Vietnamese man. He explained that on the night in question, he was with his girlfriend, Mary Ann Siebold. Moreover, defendant stated that he heard Jack Crochet admit to having committed the instant burglary.
ASSIGNMENT OF ERROR NUMBER ONE:
Defendant contends that the trial court erred by failing to grant his motion to suppress. He contends the officers were allowed inside Crochet's house to talk only because Investigator Seig indicated that he had an arrest warrant. In addition, defendant argues that the officers did not casually observe the duffel bag. Rather, once inside, they systematically searched the house. Defendant concludes that the officers gained entry to the home by trickery, thus vitiating his consent. In addition, the scope of his consent was exceeded when the officers began to "tear [Crochet's] house apart."
Investigator Seig testified that Jack Crochet cooperated completely. Crochet's invitation to continue the conversation inside his home was spontaneous. No reference was made to warrants. Moreover, the duffel bag could be plainly viewed as the officers sat on the sofa conversing with Crochet.
Defendant's legal conclusions are dependent on factual findings consistent with his description of the incident. The trial court, however, accepted Investigator Seig's version of the facts rather than defendant's. We must give great weight to the trial court's findings of fact. State v. Hale, 481 So.2d 1056, 1059 (La.App. 1st Cir.1985), writ denied, 484 So.2d 668 (La. 1986). We find no error in the trial court's credibility determination.
An individual's fourth amendment right to privacy can be waived by his voluntary consent to permit police officers in his home. State v. Owens, 480 So.2d 826, 830 (La.App. 2d Cir.1985), writ denied, 486 So. 2d 748 (La.1986), cert. denied, 479 U.S. 840, 107 S.Ct. 145, 93 L.Ed.2d 87 (1986). A consent search is a recognized exception to *611 the warrant requirement. State v. Ludwig, 423 So.2d 1073, 1076 (La.1982). Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Bodley, 394 So.2d 584, 588 (La.1981).
In the instant case, Crochet voluntarily consented to the officers' warrantless entry of his house. Under the facts and circumstances of this case, the record is devoid of evidence of coercion or trickery on the part of either officer appearing at Crochet's residence. There is no taint of any misconduct by the officers prior to Crochet's invitation to the officers to come in and talk.
Although a full scale search was not authorized, the officers were not exceeding the scope of Crochet's consent when they noticed the duffel bag and its contents in plain view. "`Plain view' is perhaps better understood ... not as an independent `exception' to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer's `access to an object' may be." Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983). The conduct which enabled the officers to observe the duffel bag was not a search within the meaning of the fourth amendment. Once Crochet's attention was called to the bag, he voluntarily surrendered its contents.
Accordingly, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO:
By this assignment defendant contends that the trial court erred by failing to grant his motion for mistrial made after defense witness Mary Ann Siebold testified that she observed prospective state witnesses Catherine Locke and Jack Crochet conversing in the hallway after the witnesses were advised of the sequestration order and prior to Miss Locke's testimony at trial.
Miss Siebold testified that she heard "Cathy [Locke] say that she would say he did, and stopped because Jack [Crochet] was shaking his head. And he said, no don't say that." Thereafter, Jack Crochet, who (although listed on the witness list) did not testify for the state, was called to the stand for the limited purpose of revealing his contact with Miss Locke. He admitted talking to Miss Locke but only about the subjects of their baby and about where she was now residing. During her trial testimony, Miss Locke also referenced talking with Crochet before trial about the baby he may have fathered. Following Crochet's testimony, the trial court denied the motion for mistrial, noting that in its opinion the sequestration order had not been materially violated.
Louisiana Code of Criminal Procedure article 764 provides for the sequestration of witnesses in a criminal trial. Violation of the sequestration order does not automatically disqualify a witness from testifying. The sanction provided by the Code is citation for contempt of court. La.C.Cr.P. art. 21(3) and art. 22. Louisiana Code of Criminal Procedure article 775 provides that a mistrial shall be declared when prejudicial conduct in or outside the courtroom makes it impossible for a defendant to get a fair trial.
A violation of the sequestration order does not warrant a mistrial absent some indication that the violation materially prejudiced the defendant. State v. Page, 431 So.2d 101, 103 (La.App. 1st Cir.1983). The record definitively reveals only that brief personal remarks were passed between Crochet and Miss Locke. There is no proof that Locke's testimony was influenced or changed in any way by Crochet's speaking to her. Defendant has therefore failed to demonstrate any prejudice.
Accordingly, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE:
Defendant contends the sentence imposed was excessive. Due to our treatment of assignment of error number five, we pretermit a discussion of this issue.
ASSIGNMENT OF ERROR NUMBER FIVE:
By this assignment of error, defendant requests a patent error review of the appellate *612 record. This Court automatically reviews the record for patent errors; an assignment of error is unnecessary. See La. C.Cr.P. art. 920.
In the instant case, prior to defendant's admitting the allegations of the multiple offender bill, the trial court advised defendant of the specific allegations contained in the bill and of his right to be tried as to the truth of those allegations. However, defendant was not advised of his right to remain silent, a requirement inferred from the statute, LSA-R.S. 15:529.1, by the Louisiana Supreme Court. See State v. Johnson, 432 So.2d 815, 817 (La. 1983). This failure of the trial court constitutes error patent on the face of the proceedings which requires us to vacate the sentence and the ruling adjudicating defendant to be a habitual offender. See State v. Griffin, 525 So.2d 705, 707 (La. App. 1st Cir.1988); State v. Burge, 506 So.2d 759, 762 (La.App. 1st Cir.1987).
For these reasons, defendant's conviction is affirmed. The ruling adjudicating defendant to be a multiple offender and the sentence imposed accordingly are hereby vacated. The matter is remanded to the trial court for further proceedings in accordance with the views expressed herein.
CONVICTION AFFIRMED; MULTIPLE OFFENDER ADJUDICATION AND SENTENCE VACATED: REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] Jack Crochet and Trinh Dung were charged jointly by the same bill of information.