602 So.2d 15 (1992)
STATE of Louisiana, Respondent,
v.
Jimmy CHARLES, Relator.
No. K92-263.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1992.
*16 Alfred Boustany, II, Lafayette, for relator.
Donald Richard, Asst. Dist. Atty., Opelousas, for respondent.
Before GUIDRY, J., and CULPEPPER and MARCANTEL,[*] JJ. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
Relator, Jimmy Charles, was indicted for first degree murder, a violation of La.R.S. 14:30. Relator filed several pretrial motions including a motion to suppress evidence seized from an alleged unconstitutional search and seizure and a motion for discovery of certain materials relating to DNA testing which was done by the State. After several days of pretrial hearings, the trial court denied both of relator's motions. Relator now seeks this writ of review alleging three assignments of error:

ASSIGNMENT OF ERROR NUMBER 1
Relator contends the trial court erred in denying his motion to suppress evidence which was obtained from an unconstitutional, warrantless search and seizure. Relator, who was a suspect in a murder case in St. Landry Parish, was staying with his cousin in Lake Charles when certain police officers went to the cousin's home to arrest him. Relator was not present when the police arrived; however, the wife of relator's cousin, Mrs. Charles, permitted the police officers to search the house. During the search, the officers noticed a closed suitcase in the den. The police were told the relator slept on the daybed in the den and the suitcase located beside the bed belonged to him. The officers asked Mrs. Charles if they could search the suitcase. She gave her consent to the search of the suitcase. Before the suitcase was opened, relator's cousin came home and also gave his consent for the officers to search the suitcase. After opening the suitcase and searching a compartment, the officers found a gun which bore the same serial number as the gun taken from the murder victim's house. Relator contends it was error for the officers to rely on the consent of a third party to search his suitcase when the officers knew the third party did not own or exercise any dominion and control over his suitcase. Since the federal and state constitutions provide protection to individuals and their privacy rather than to specific places, relator contends a guest in another person's home is entitled to a constitutional protection against unreasonable search and seizure. For this reason, relator contends it was error for the trial court to deny the motion to suppress.
Several issues present themselves under these circumstances. On one hand and at the heart of the matter, is relator's Fourth Amendment protection under the United States Constitution against unreasonable searches and seizures. On the other hand, there is the issue of whether the officers were reasonable in their belief that they could rely on the consent given by the relator's cousin and his wife which allowed them to search relator's suitcase. We will *17 discuss these issues and others more fully below.
Article I, § 5 of the 1974 Louisiana Constitution provides as follows:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this section shall have standing to raise its illegality in the appropriate court."
Amendment IV of the United States Constitution reads as follows:
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
The Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution prohibit unreasonable searches and seizures. A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tatum, 466 So.2d 29 (La.1985). A consent search is a recognized exception to the warrant requirement. Schneckloth v. Bustamonte, supra; State v. Ludwig, 423 So.2d 1073 (La.1982); State v. Musacchia, 536 So.2d 608 (La.App. 1 Cir.1988). Consent is valid when it is freely given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); State v. Bodley, 394 So.2d 584 (La. 1981); State v. Musacchia, supra.
The authority which justifies the third party consent does not rest upon the law of property, with its attendant historical and legal refinements. Rather, it rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that others have assumed the risk that one of their number might permit the common area to be searched. United States v. Matlock, supra; State v. Price, 476 So.2d 989 (La.App. 1 Cir.1985). A person's expectation of privacy is severely limited by the joint dominion or authority over the property. State v. Abram, 353 So.2d 1019 (La.1977), cert. denied, 441 U.S. 934, 99 S.Ct. 2058, 60 L.Ed.2d 663 (1979); State v. Rowls, 552 So.2d 764 (La.App. 1 Cir.1989).
In the case sub judice, certain facts must be noted in determining whether relator had a reasonable expectation of privacy. Relator came to Lake Charles from Opelousas to stay with his cousin, Norris Charles, and his family. Mr. Charles lives in a two bedroom, one bath home with his wife and two children, ages 4 and 10. When visitors came to stay with the Charles family, the visitors stayed in the den on the daybed. The den at the Charles' home is a highly trafficked area. Most of the family meals were eaten in the den. The family also watched television in the den. There are toys for the children to play with in the den. There is a back entrance from the den to the backyard where the children go in and out to play on their swing set and also play with and attend to their dog. This is an area with a constant flow of traffic and activity. Not much privacy can be expected by anyone who stays in the den.
When relator stayed in his cousin's den, he was not given a closet or a chest of drawers in which to keep his things. His personal effects were not segregated in any way from other things located in the den. Neither did relator tell anyone not to *18 touch his things. He kept all of his belongings in his suitcase which was kept beside the daybed out in the open in the den. Although relator's suitcase was latched, it was not locked.
At one point, after relator had arrived to stay at his cousin's house, he took the gun out of his suitcase and showed it to his cousin. He told him that he found it in a car at the junkyard. His cousin didn't remember seeing him put it back into the suitcase, but believed that is what he did.
In State v. Cormier, 438 So.2d 1269 (La. App. 3 Cir.1983), writ granted, 443 So.2d 599 (La.1983), affirmed and remanded, 453 So.2d 1202 (La.1984), appeal after remand, 478 So.2d 794 (La.App. 3 Cir.1985), this court stated that the test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable.
In State v. Cover, 450 So.2d 741 (La.App. 5 Cir.1984), writ denied, 456 So.2d 166 (La. 1984), a third party consent was at issue. The court stated that an exception to the general rule of a person's privacy being severely limited by the joint dominion or authority over the property is when, within a residence, there are areas or zones set apart for the exclusive use of one tenant or the other. In this context, the host could not consent to a search of a room set aside exclusively for the use of a guest.
The court in Cover, supra, went on to say a second exception to the general rule would apply to articles or belongings which would be commonly deserving of a "high expectation of privacy."
Applying these tests to the case sub judice, we see that first of all there was no area or zone used exclusively by the relator. The den was an area that the entire family used, from eating their meals to an area used for recreation. In applying the second exception, relator's expectation of privacy was diminished in regards to his suitcase through his actions. Not only did he show his cousin the contents of the suitcase, i.e., the gun, but he also kept the suitcase in a highly trafficked area in which young children were in and out. He never laid down any rules in which he specifically told the family not to touch his things, neither did he take any precautions by separating his effects from the Charles' family things. Through relator's actions and/or lack of action, and because no clear area was set aside for his exclusive use, relator's expectation of privacy was clearly and severely diminished.
Next, we turn to whether the officers were reasonable in their reliance on the consent given to them by relator's cousin and his wife for the authority to search relator's suitcase.
In Illinois v. Rodriguiez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), the United States Supreme Court addresses the issue of whether the right to be free of "unreasonable" searches has been violated. The court states:
"It is apparent that in order to satisfy the `reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the governmentwhether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirementis not that they always be correct, but that they always be reasonable. As we put it in Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949):
`Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions probability.'"
In the case at hand, the officers obtained reliable information which came from a combination of sources that relator was seen at the scene of the murder. These sources also knew that relator had gone to Lake Charles to stay at his cousin's house and that relator had with him the gun which was taken from the murder victim's home. Relying on this information, the officers had an arrest warrant *19 issued and they proceeded to Lake Charles to execute the warrant. Upon arrival at the Charles home, they found that relator had left the home an hour earlier on a bike. Mrs. Charles not only asked them to come into the home to search, but she insisted on signing a consent form allowing them to search the premises and relator's suitcase. Before the officers searched the suitcase, relator's cousin came home and also consented to the police searching the suitcase. At this point, before the officers even opened the suitcase which was located in the family den, out in the open, they had the consent of both Norris Charles and his wife to do so. The police, in good faith, felt they were reasonable in their belief and actions to proceed further and search relator's suitcase and looking for the gun which would connect relator to the scene of the crime.
Coupling relator's diminished expectation of privacy together with the reasonableness of the police officers' actions in relying on the consent given to them to search relator's suitcase, we hold that the search and seizure of the gun was not unconstitutional. We therefore affirm the trial court in denying relator's motion to suppress this evidence.

ASSIGNMENT OF ERROR NUMBER 2
Relator contends the trial court erred in denying him access to certain documents, data bases and other items relating to DNA testing done by the State. After the State gave relator notice of its intent to introduce at trial the results of DNA tests done on blood samples taken from the murder scene, relator moved for the production of evidence necessary for his experts to determine the reliability of the DNA testing process and test results. Relator's experts contend this information, which is in the custody of the State's experts, would disclose the unreliability of the testing process and test results. Relator contends it was error for the trial court to deny him access to this exculpatory evidence. He also contends this exculpatory evidence is subject to the constitutional requirement, under both the Federal and State constitutions, and that such evidence be disclosed to the defense.
The discovery of documents and tangible objects is covered by La.C.Cr.P. art. 718 which provides:
"Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection."
The discovery of reports of examination and tests is covered by La.C.Cr.P. art. 719, which provides:
"Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial."
In the case of State v. Martinez, 432 So.2d 1201 (La.App. 4 Cir.1983), writ denied, 435 So.2d 439 (La.1983), the court held that, where the State had furnished the defendant with a copy of the crime laboratory's report indicating a positive result for cocaine and with a sample of contraband for the defendant's own testing, the refusal to permit further discovery of the analytical methods of the State's chemists was not error in the absence of a showing of prejudice to the defendant.
*20 In State v. Burgess, 482 So.2d 651 (La. App. 4 Cir.1985), the court held that the disclosure of the various examination and/or test results used by an expert to formulate his conclusionary opinion is necessary for the defendant's adequate preparation for trial, particularly the cross-examination of that expert. Fundamental fairness and due process require that the defense be given the opportunity prior to trial to examine the basis from which an expert reaches his conclusion, since the expert must lay the proper foundation before he gives his opinion. The court found no reason why that foundation should not be disclosed to the defendant prior to trial. That information cannot be changed or distorted prior to trial, nor would it afford an opportunity to raise false or specious defenses. The court held that the language "intended for use at trial" in La.C.Cr.P. art. 719 does not preclude discovery. Even though only the final conclusionary report will actually be received in evidence, all of the test or examination reports and/or results that were relied upon or referred to by the expert to reach his conclusion will be indirectly, if not directly, used at trial. The court distinguished Martinez, supra, stating the defendant in that case was given a sample of the evidence tested and was able to adequately prepare; however, in Burgess, supra, the defendant did not have that opportunity.
In State in the Interest of H.B., 580 So.2d 1062 (La.App. 4 Cir.1991), the court again distinguished the cases of Burgess, supra, and Martinez, supra. The defendant sought discovery of documents relating to the quality and type of machines used to perform the cocaine analysis and documents relating to the qualifications of the lab technicians who performed the tests. The court held that these documents were not discoverable under either La. C.Cr.P. art. 718 or art. 719. The court also noted that the State gave the defense a copy of the crime lab report and made the seized contraband available for defense inspection and tests. Therefore, the Burgess case was inapplicable and the Martinez case was controlling. In State v. Lingle, 461 So.2d 1046 (La. 1985), the court noted that discovery in criminal cases was not to be strictly construed: criminal justice requires "a fair construction, one that does not hide or conceal relevant evidence, and also does not afford an opportunity to raise false or specious defenses." The court allowed the discovery by the defense of a crime-scene technician's report despite the State's contention that it did not intend to use the report at defendant's retrial. The court found that the expert who had prepared the report had testified at the first trial and he would likely be called to testify at the second trial. The "intended for use at trial" language in La.C.Cr.P. art. 719 must be read to include the requirements of La. C.Cr.P. art. 725, that reports be disclosed if related to the witness' testimony at trial. The duty to disclose information by the defense may not be more burdensome than the reciprocal duty placed on the State. The court also held that the La.C.Cr.P. art. 723 work product limitation does not apply to the discoverable results or reports provided the defense in La.C.Cr.P. art. 719. Lingle, supra, is distinguishable with the case at bar, Martinez, supra, and Burgess, supra, in that the evidence sought was a crime scene investigative report and not a scientific test; thus, no independent testing could be performed by the defense.
This court is of the opinion that the scheme adopted by the Fourth Circuit in the discovery of test results or reports is a fair construction of La.C.Cr.P. art. 719. If the defendant is given a sample of the evidence, which he can have independently tested, then the State's expert should not have to reveal the methods and procedures used to test the evidence. By giving the defendant a sample for independent testing, the defense could use their expert to impeach the testimony of the State's expert. If the defendant is not given a sample of the evidence for independent testing, then fundamental fairness implies that the defendant should be able to discover the methods used by the State's expert in reaching his conclusion. The discovery of the expert's quality controls and methods would give the defendant an opportunity to impeach the expert's results.
It is not clear in the instant case if relator has been provided with evidence of *21 the blood samples so that he may conduct his own independent DNA testing. We, therefore, hold that the case should be remanded to the trial court for a hearing to determine if relator has been provided with evidence so that he may complete his own DNA testing. If relator has been provided with this evidence, the State should not have to reveal the methods and procedures used to test this evidence. If relator has not been given the evidence, then relator should be able to discover the methods used by the State's expert in reaching his conclusion.

ASSIGNMENT OF ERROR NUMBER 3
Relator contends the trial court erred in denying him a pretrial hearing to determine the admissibility of the DNA test results. Although the questions of admissibility, relevance and weight of evidence are properly resolved at the trial on the merits and not by pretrial motions, relator contends that certain evidentiary matters play such a vital role in the fact finding process and may be so prejudicial if improperly admitted, that it would serve the orderly administration of justice and further insure the relator a fair trial if the admissibility of the evidence could be determined at a pretrial hearing. State v. Tanner, 457 So.2d 1172 (La.1984). Relator contends the admission into evidence of the DNA test results would be extremely prejudicial to relator. Therefore, relator contends that DNA results fall into the category for which pretrial admissibility determinations have previously been allowed such as blood alcohol test results, improper lineup evidence and polygraph evidence. State v. Catanese, 368 So.2d 975 (La.1979). For this reason, relator contends he should be granted a pretrial hearing on the admissibility of the DNA test results.
In Tanner, supra, the court held that the wrongful introduction of a chemical analysis test result, which by law presumes a defendant to be intoxicated, is so prejudicial to the defendant that a resulting conviction cannot stand, even if there is other evidence of intoxication. In view of the vital role that the legal presumption plays in determining guilt and the highly prejudicial nature of chemical test results if wrongfully introduced, it would serve the orderly administration of justice and further insure the defendant a fair trial if the admissibility of the test results could be determined in a pretrial proceeding.
In State v. Catanese, 350 So.2d 677 (La. 1977), the court ordered an evidentiary hearing be held which the defendants had requested concerning the introduction of polygraph test results. In State v. Wilkerson, 261 La. 342, 259 So.2d 871 (1972), the court allowed the filing of a pretrial motion to suppress the admissibility of an alleged improper lineup procedure even though such a procedure is not specifically allowed by the Code of Criminal Procedure.
We, therefore, hold that the trial court erred in denying relator's request to hold a pretrial hearing on the admissibility of the DNA test results. Although there is no provision in the Code of Evidence which specifically gives relator a right to a pretrial hearing, we believe that the wrongful introduction of DNA test results at trial would be extremely prejudicial to relator. This court believes it would serve the orderly administration of justice and further insure the relator a fair trial if the admissibility of the DNA evidence could be determined at a pretrial hearing.
WRIT DENIED IN PART AND GRANTED IN PART AND MADE PEREMPTORY: We affirm the trial court's denial of relator's motion to suppress the evidence seized from relator's suitcase.
On relator's motion for production of the DNA evidence, the trial court is ordered to hold an evidentiary hearing to determine if relator has been provided with the evidence so that he may complete his own independent genetic testing. If relator has been provided with this evidence, then the State is not required to answer relator's motion for discovery. State v. Martinez, 432 So.2d 1201 (La.App. 4 Cir.1983), writ denied, 435 So.2d 439 (La.1983). If the State has not provided the relator with this evidence, the State must fully answer relator's motion for discovery in accordance with La.C.Cr.P. art. 719. See, State v. Burgess, 482 So.2d 651 (La.App. 4 Cir. 1985).
*22 We further find that the trial court erred in ruling that a hearing on the admissibility of the DNA evidence may not be held pretrial. To hold the hearing pretrial would serve the orderly administration of justice and further insure the relator a fair trial.
Accordingly, the case is remanded to the trial court for further proceedings consistent with the views expressed herein.
NOTES
[*] Honorable William A. Culpepper, Retired, and Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.