626 So.2d 820 (1993)
STATE of Louisiana, Appellee,
v.
James HOPKINS, Appellant.
No. 25,233-KA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
*821 Raymond L. Cannon, Tallulah, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, James Caldwell, Dist. Atty., George F. Fox, Jr. Asst. Dist. Atty., Tallulah, for appellee.
Before LINDSAY, HIGHTOWER and VICTORY, JJ.
HIGHTOWER, Judge.
A jury found James Hopkins guilty as charged of second degree murder, LSA-R.S. 14:30.1. Thereafter, the trial court imposed the requisite sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Relying on three of his four assignments of error, defendant now appeals. We affirm.

FACTS
On the evening of November 25, 1991, Hopkins forced his way into the residence of his estranged wife, Betty Joe Hopkins ("Betty"). Once inside, and after instructing their two young daughters to leave the room, he began dragging their mother from where she had been previously positioned. During the ensuing struggle, defendant stabbed Betty thirty times with a thin-bladed knife, while the youngsters watched from a hallway. The woman's multiple wounds caused excessive blood loss and a rapid death.
Shortly after the incident, defendant requested transportation in Charlie Williams's pickup. That individual drove the two girls and their father to the home of Hopkins's mother. When the two men later went for a short ride, the malefactor confessed the murder and asked his companion to supply an alibi.
Presented evidence also revealed that, prior to the tragedy, Hopkins threatened his wife's life several times in the presence of others. During one such episode, defendant struck Betty, cutting her lip. He then pulled a knife and warned he would kill her. As a consequence, she reported the incident to the police.

DISCUSSION

Assignment of Error No. 1
Defendant first challenges the sufficiency of the evidence by asserting that the trial court erred in denying his post-verdict motion for acquittal, filed pursuant to LSA-C.Cr.P. Art. 821.
The criteria for evaluating sufficiency of evidence is whether, upon viewing evidence in the light most favorable to the prosecution, any rational trier of fact could have found all elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992). That standard, initially enunciated in Jackson, and now legislatively embodied within LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. *822 Smith, 441 So.2d 739 (La.1983); State v. Perry, 612 So.2d 986 (La.App. 2d Cir.1993).
LSA-R.S. 14:30.1 defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. As stated above, the couple's two minor daughters witnessed the slaying. Each girl testified that, after attempting to send them to their room, Hopkins stabbed Betty repeatedly. The children then accompanied him to their grandmother's house, where they heard their father state to his mother, "Betty's dead." Williams, who transported the trio that night, testified that defendant asked him to tell authorities that they had been together at the time of the homicide. Several additional witnesses placed the accused near the crime scene during the period in question.
Hopkins contends that the evidence supports only a conviction of manslaughter, LSA-R.S. 14:31. Both during closing arguments and in his post-trial motion, he asserted that the state failed to prove the requisite specific intent. Defendant claims, instead, to have been under the influence of cocaine when the crime occurred. In support of that contention, he points to his youngest daughter's statement that her father looked strange that night. According to Williams, however, his adult passenger appeared quite normal. Another witness, the victim's sister, explained that her brother-in-law frequently demanded money from Betty to support his cocaine habit.
LSA-R.S. 14:15, of course, permits evidence of a drugged condition that precludes the presence of a specific criminal intent. Even so, this is an affirmative defense placing the burden of proof upon the defendant. See State v. Lott, 574 So.2d 417 (La.App. 2d Cir.1991), writ denied, 580 So.2d 666 (La. 1991). Little within the present record reflects that the offender used any controlled dangerous substance, or suffered any delusions, on November 25, 1991.
Clearly, it is the function of the judge or jury to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Bonnett, 524 So.2d 932 (La.App. 2d Cir.1988), writ denied, 532 So.2d 148 (La.1988). Where the trier of fact has made a rational determination, an appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La. 1988); State v. Combs, 600 So.2d 751 (La. App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992). Indeed, in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the fact-trier, is sufficient support for the requisite factual conclusion. State v. Reaves, 569 So.2d 650 (La.App. 2d Cir.1990), writ denied, 576 So.2d 25 (La. 1991); State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990).
Certainly, when viewed in the light most favorable to the prosecution, the record permits a rational juror to find beyond a reasonable doubt that defendant committed the second degree murder of his wife. We further note that there is no indication that the victim in any way provoked her estranged husband's actions, nor does he elaborate upon this argument in his appellate brief. Indeed, the evidence in support of the jury's verdict is overwhelming. This assignment of error lacks merit.

Assignment of Error No. 2
Hopkins next asserts that the lower court erred in denying his motion for mistrial, posed during the state's closing argument. At that time, defense counsel maintained the accused could not receive a fair trial in that the victim's family appeared visibly upset and cried during summation. Stating for the record that there had been merely tears from those individuals and no outbursts, the trial court declined to grant such a remedy. Although the judge did not then admonish the jury to disregard the crying, she did later charge them not to be influenced by sympathy, passions, prejudice, or public opinion.
When prejudicial conduct inside the courtroom makes it impossible for a defendant to obtain a fair trial, a mistrial may be granted. LSA-C.Cr.P.Art. 775. However, the determination in that regard rests within the sound discretion of the trial judge, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that *823 discretion. State v. Smith, 433 So.2d 688 (La.1983); State v. Thomas, supra. Mistrial, a drastic measure, should be ordered only where prejudice suffered by the defendant has deprived him of any reasonable expectation of a fair trial. Id.
In State v. Wright, 441 So.2d 1301 (La. App. 1st Cir.1983), the first circuit affirmed the denial of a mistrial motion prompted by a spectator's outburst at the close of trial. Removal of that person from the courtroom and an admonition to the jury sufficiently cured any possible prejudice. Likewise, in State v. Domangue, 350 So.2d 599 (La.1977), the supreme court deemed a mistrial unnecessary when a rape victim's spouse began crying during closing arguments and before being escorted outside.
In the case sub judice, although the victim's family remained in the courtroom despite their tears, the trial court explained for the record that they had not created a distraction. Thereafter, the jury charge instructed the panel not to base their verdict upon sympathy or passion. In our view, that action adequately deflected any potential prejudice. Nor do we find merit in defendant's additional complaint that he should have been allowed to present evidence in support of his request. All of the events in question transpired in the presence of the judge, and Hopkins fails to explain how further testimony would have assisted in addressing the issue.
No prejudice has been demonstrated, nor does the mistrial denial constitute an abuse of discretion. This assignment of error lacks merit.

Assignment of Error No. 3
Finally, Hopkins argues that the trial court also erred in denying another motion for mistrial premised, in this instance, upon an alleged sequestration violation by prosecution witnesses.
During the presentation of the state's case, the defendant's sister, Patricia Stewart, informed counsel for the accused that the victim's relatives, after testifying, revealed to other witnesses the questions asked. When called to the stand, she particularly noted that one such individual, Roschelle Matthews, reported that "they" attempted to show she, Matthews, had influenced Betty's children. Stewart also recalled Deputy Wayland instructing the involved persons to move down the hallway outside the courtroom. She further remembered yet another witness discussing his observations concerning defendant's proximity to the victim's home.
The purpose of sequestration is to assure that a witness testifies as to his own knowledge, to prevent witnesses from being influenced by the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Green, 621 So.2d 629 (La.App. 2d Cir.1993). In examining sequestration violations, the reviewing court considers the facts of each case to determine whether or not prejudice resulted. Id. Further, a violation of the sequestration order does not warrant a mistrial absent an indication that the infraction materially prejudiced the defendant. State v. Musacchia, 536 So.2d 608 (La.App. 1st Cir.1988).
In light of Stewart's assertions, the trial judge called the witnesses to the courtroom, explaining again the requirements of the sequestration order and that any violations could result in contempt convictions. Each individual responded that he understood and would comply with the mandate. Thereafter, defense counsel moved for a mistrial and requested to present evidence on the subject. Although declining, due to time constraints, to allow all 19 witnesses to be questioned on the stand, the court agreed to withhold a ruling until counsel could further investigate.
Upon completing his inquiries, defense counsel reported that each witness denied discussing the facts of the case with others. The state then called Matthews and Wayland, who both refuted Stewart's allegations. Finding both no evidence of duplicative testimony and that defendant failed to demonstrate any prejudice, the trial court denied the mistrial motion. Our review of the record reveals no abuse of discretion in that ruling. Cf. State v. Musacchia, supra.
On appeal, defendant also complains that the trial court refused to allow him to present evidence on the motion. However, after *824 reporting the witnesses' denials, defense counsel did not reurge his request in that regard nor assert that additional evidence would be needed for a proper ruling.
This assignment of error lacks merit.

Assignment of Error No. 4
As his fourth assignment, Hopkins initially complained that the trial court erred in refusing to admonish the jury regarding hearsay evidence. However, having been neither briefed nor argued, this contention is considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La. 1990).

Errors Patent
Finally, we have reviewed the record for errors patent. LSA-C.Cr.P. Art. 930.8 provides that, at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief. Although the record does not show Hopkins being so advised, this apparent oversight is not grounds for reversal. See LSA-C.Cr.P. Art. 921. Inasmuch as the required notice is designed to apprise the defendant in advance concerning the elapsing of the statutory time limitation, the district court is hereby directed to send appropriate written notice to Hopkins within ten days of the rendition of this opinion and then file, in the record, written proof that defendant received such notice.

CONCLUSION
Accordingly, for the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.