674 So.2d 1108 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Barry BAKER, Defendant-Appellant.
No. 28152-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1996.
Rehearing Denied June 20, 1996.
*1110 Sanford & Lilly by Roy M. Lilly, Jr., Indigent Defender, Gibsland, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Mary E. Hunley, Assistant Attorney General, Walter E. May, Jr., District Attorney, C. Glenn Fallin, Assistant District Attorney, for Plaintiff-Appellee.
Before MARVIN, NORRIS and BROWN, JJ.
NORRIS, Judge.
The defendant, Barry Baker, was charged by bill of information with one count of distribution of a Schedule II Controlled Dangerous Substance, cocaine, in violation of R.S. 40:967 A. He proceeded to jury trial in which he was found guilty as charged. The district court sentenced him to 10 years in prison at hard labor. He now appeals his conviction, raising 15 specifications of error.[1] For the reasons expressed, we affirm.

Factual background
The case arose from a controlled drug "buy" in Gibsland on January 7, 1994. Deputy Jarrett Ketchum, narcotics chief for the Bienville Parish Sheriff's Office, met with two undercover agents on loan from Beauregard Parish, Deputy Saul Wilson and Deputy Betty Pichon. Dep. Ketchum supplied the agents with "buy" money, told them where to work and introduced them to a confidential informant ("CI") to facilitate their operation. He did not direct them to any particular suspect.
Deputies Wilson and Pichon, with the CI, drove around Gibsland in an unmarked car looking for drug dealers. About 8:00 p.m., on the advice of the CI, they pulled up to the front of a pool hall and waited in the car, watching the passers-by. Presently the CI recognized the defendant and called out, "Hey, Barry." Baker walked to the car; Dep. Wilson and the CI got out to speak to him. Dep. Pichon remained in the car and watched. The CI told Baker that Dep. Wilson was "looking for something," and Wilson told Baker he wanted "a twenty," meaning a $20 rock of crack cocaine. The CI then walked away from the transaction to speak to a nearby group of people.
According to both deputies, Baker reached into his right pants pocket and pulled out a matchbox. He opened the matchbox, removed a whitish rock (later proven to be crack cocaine) and handed it to Dep. Wilson; Wilson gave him $20 in exchange. Dep. Wilson placed the rock in his own pocket, got back in the car, and placed the rock in an envelope. The deputies then waited a few minutes for the CI, who was still talking to pool hall patrons. When he returned to the car, the three drove off and resumed looking for drug dealers.
Later the same evening they came back to the pool hall. According to the deputies, Baker was still there and offered to sell them more crack. They declined and left. Around 9:00 p.m. they delivered the rock to Dep. Ketchum at a pre-arranged location. They described the seller, including the name they had learned from the CI. In fact, Dep. Wilson jotted on a piece of paper (introduced *1111 as Exhibit S-6) that remained with the suspected crack in the evidence envelope, "Barry Baker, 8 p.m., pool hall, 1 rock, $20, blue flannel shirt, big boy."
Dep. Wilson testified that he identified Baker in a photo line-up in March 1994, roughly a month before his arrest on April 27. Both Wilson and Pichon picked Baker from a photo line-up one day before trial in April 1995, and they positively identified him in open court.
The defense called several witnesses, most of whom testified as to the type of clothing Baker usually wore. Another defense witness, Vincent Eric McDonald, testified that he had worked as a CI with two deputies, a man and a woman, in Gibsland. He testified he never sold any cocaine to Baker, but admitted he may have pointed him out to undercover agents. He also could not recall what he was doing on January 7. Baker himself testified, admitting that he had a prior conviction in Claiborne Parish for possession of CDS but denying that he ever sold cocaine to Deputies Wilson and Pichon. As noted, the jury found Baker guilty as charged.

Discussion: Sufficiency of the evidence
By his first two specifications Baker urges the evidence, even viewed in the light most favorable to the State, did not prove beyond a reasonable doubt that he was guilty of distribution of cocaine, or of any responsive verdict.
The appellate standard for sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560; State v. Bellamy, 599 So.2d 326 (La. App.2d Cir.), writ denied 605 So.2d 1089 (1992). The appellate court's authority to review questions of fact in a criminal case is limited to the sufficiency determination under Jackson, supra, and does not extend to credibility determinations by the finder of fact. La. Const. Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App.2d Cir. 1984). When the finder of fact has made a rational credibility call, the appellate court should not disturb it. State v. Mussall, 523 So.2d 1305 (La.1988). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the finder of fact, is sufficient to support the requisite factual conclusion. State v. Carey, 628 So.2d 27 (La. App.2d Cir.1993), writ denied 94-0018 (La. 3/25/94), 635 So.2d 236; State v. Braswell, 605 So.2d 702 (La.App.2d Cir.1992); State v. Garlepied, 454 So.2d 1147 (La.App. 4th Cir.), writ denied 462 So.2d 189 (1984).
In cases involving a defendant's claim that he was not the perpetrator of the crime, or where he remains silent, the Jackson rationale requires the State to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Brady, 414 So.2d 364 (La.1982); State v. Chism, 591 So.2d 383 (La.App.2d Cir.1991).
The statute under which Baker was charged makes it unlawful for any person knowingly or intentionally, among other acts, to distribute a controlled dangerous substance classified in Schedule II. La.R.S. 40:967 A. "Distribute" means, among other acts, to deliver a controlled dangerous substance by physical delivery; "delivery" means the transfer of a controlled dangerous substance. R.S. 40:961(13), (9).[2]
The thrust of Baker's argument is that the deputies' identification of him is unreliable, as they "could recite the standard recitations common to all alleged undercover buys: they could recite big man, blue shirt, black pants, which are clothes that almost everyone has, or which could be confused at a distance." He further argues that the testimony of the defense witnesses refutes the deputies' account that he kept the cocaine in his front pants pocket because the defense evidence showed beyond a reasonable doubt that at the time of the alleged offense, Baker did not own any pants with pockets.
*1112 Baker's witnesses included Fannie Lee Bailey, the manager at Fast Pak # 3; Mrs. Carrie Lee Baker, the defendant's grandmother; Johnny Earl Douse, a former co-worker of Baker's at ConAgra; Sherman Baker, the defendant's brother; and Doretha Crawley, the defendant's fiancée and roommate of some five years. They all testified that for the past several years, they had not seen Baker dressed in anything but sweat pants without pockets; Mrs. Baker added that she had bought him dress pants for his court appearance only a few days before trial.[3]
In the first place, this is not a situation where the State's testimony is internally contradictory or in hopeless conflict with physical evidence. Cf. State v. Gipson, 26,433 (La.App.2d Cir. 10/26/94), 645 So.2d 1198.[4] The testimony of the defendant and five of his friends and relatives is not "physical evidence" that he owned or wore no pants with pockets. See State v. Evans, 512 So.2d 615, 622 (La.App.2d Cir.1987). The issue is only whether the jury could rationally disregard the defense testimony and accept the deputies' account of the drug transaction. The defense's proposition that a 23-year old manone who claims to attend church and work for a steel fabrication company, and may have recently attended his brother's weddingthat such a man never wore pants with pockets may be so implausible on its face that no rational fact finder would believe it. State v. Mussall, 523 So.2d at 1311-1312; cf. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Further, even if the defense witnesses' testimony is taken at face value, it is not consistent enough to mandate a finding of insufficient evidence to convict. For instance, Douse testified not only that Baker always wore sweat pants, but that he never wore a coat; Baker disagreed, saying he wore a high school letter jacket in cold weather, and Douse had seen it. R.pp. 222, 243. None of the defense witnesses could recall if he or she was with Baker on the night of January 7, or confirm what he was doing or wearing at the time. Notably, Vincent McDonald, whom the defense tried to name as the CI who assisted Deps. Wilson and Pichon in the sale, refused to say he (McDonald) was involved.[5] By contrast, the deputies' testimony identifying Baker as the seller was positive and unhesitating, easily negating the reasonable possibility of misidentification. State v. Long, 408 So.2d 1221, 1227 (La.1982).
Viewed in the light most favorable to the State, the evidence permits a finding that on the night in question, Baker went to the pool hall wearing pants with pockets, and sold a $20 rock of crack cocaine to Dep. Wilson. This specification of error lacks merit.
Finally, Baker urges that another essential element of the offense was not proved. He correctly cites the bill of information as charging that he knowingly or intentionally distributed a Schedule II CDS, "when said substance had not been obtained directly or pursuant to a valid prescription or order from a practitioner[.]" R.p. 14. He contends that the State offered no proof that his conduct was not pursuant to a valid prescription or order of a practitioner. However, neither the statute under which Baker was charged, R.S. 40:976 A, nor any other statute requires the State to prove the absence of a prescription. The Code authorizes the court to disregard surplusage in the bill. La.C.Cr.P. art. 486; State v. Wagner, 229 La. 223, 85 So.2d 272 (1956). The quoted passage is obviously an unnecessary effort to negate the "lawful order" exception of R.S. *1113 40:973B(3).[6] La.C.Cr.P. art. 479. If Baker wished to contend that he sold crack to Dep. Wilson pursuant to the lawful order of a practitioner, then he was required to raise this by way of defense. Id. He did not do so. This argument lacks merit.

Disclosure of CI
By his ninth specification, Baker urges the State's witnesses should have been required to affirm or deny that Vincent McDonald was or was not the CI, when Baker subpoenaed him to contradict the undercover deputies' testimony as to what the CI had done. In brief Baker contends McDonald "testified that he was the CI" and had the defense been able to prove this, "the Jury could not have failed to understand that the person about whom the undercover persons were testifying disputed their testimony."
Louisiana has a strong public policy in favor of protecting the identity of confidential informants. State v. Davis, 411 So.2d 434 (La.1982). The defendant bears the burden of showing exceptional circumstances which would require disclosure of the CI's identity, and the district court has much discretion in deciding whether such disclosure is warranted. State v. Oliver, 430 So.2d 650 (La.1983), cert. denied 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). A showing that the informant participated in the crime constitutes exceptional circumstances requiring disclosure. State v. James, 396 So.2d 1281 (La.1981); State v. Humphries, 463 So.2d 804 (La.App.2d Cir.1985).
Whether a CI's actions amount to "participation" in a crime sufficient to merit disclosure of his identity depends on the particular facts of the transaction. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In Louisiana, courts have consistently held that the State need not disclose the identity of a CI who merely introduces law enforcement officers to the defendant and does not actually participate in the transaction. See, e.g., State v. Thompson, 27,543 (La.App.2d Cir. 12/6/95), 665 So.2d 686, and citations therein; State v. Jones, 587 So.2d 787 (La.App.3d Cir.), writ denied 590 So.2d 78 (1991). However, when the CI plays a more substantial role, disclosure may be warranted. State v. Carey, 626 So.2d 905 (La.App.3d Cir.1993); State v. Fontenot, 524 So.2d 867 (La.App.3d Cir. 1988).
The participation of the CI in the instant transaction is almost identical to that in State v. Thompson, supra (also involving Deps. Wilson and Pichon). The deputies said the CI introduced Dep. Wilson to Baker. Wilson testified that the CI said, "My boy here he looking for something." R.p. 84. Pichon said the CI called, "Hey Barry, come here," and Baker walked over. R.p. 118-119. This is precisely the type of de minimis role that was found not to warrant disclosure in State v. Thompson.
At oral argument, counsel strongly argued that this case differs from the ordinary identity disclosure case in that Baker subpoenaed McDonald, whom he believed was the CI, to dispute the deputies' testimony of what happened the night of the crime. Baker even asserts in brief, "He [McDonald] testified that he was the CI." Br., 19. Were this true, Baker would have a stronger argument that the court should have required the deputies to affirm or deny that McDonald was the CI, as his testimony that he never introduced them to Baker would directly contradict the deputies' account.
The record, however, does not support the contention that McDonald "testified that he was the CI" on this particular occasion. On cross examination, he could not remember if he was with the undercover agents on the night of this crime, and declined to state when he worked with them as a CI. R.p. 212. Defense counsel also tried to lead McDonald *1114 into saying he was the CI, but McDonald did not agree. R.p. 209. Because of his refusal to say he was the CI on the night in question, there is little reason to depart from the policy of protecting the identity of informants. McDonald's testimony as an undercover informant is interesting but not relevant because he could not place himself on the scene of this crime. Further, although he denied ever helping the deputies sell drugs to Baker, he admitted he might have introduced them at one time, which would not be inconsistent with how Dep. Pichon described the incident. McDonald testified he never stayed around when the drug deal was consummated. Disclosure was not warranted. State v. Thompson, supra. This specification lacks merit.

Chain of custody
By his 11th and 12th specifications Baker urges the State failed to prove both that a proper chain of custody of the evidence had been maintained and that the substance introduced at trial as the CDS was actually the alleged substance. He contends that the deputies initially identified and sealed the alleged purchase in an envelope, and wrote information on the envelope as they drove away; later, Dep. Ketchum removed the substance, placed it in another envelope, and threw away the original envelope; and when he opened it in court, there was a note (Exhibit S-6) which he could not explain. Baker concludes from this that the admittedly destroyed notes, the uncertainty as to the note wrapped around the one piece of cocaine, and the destroyed envelope prevented an unbroken chain connecting the purchase to the analyzed substance.
Deputy Wilson testified that after he bought the rock from Baker, he got back in the unmarked car and asked Dep. Pichon for something to put it in; she handed him an envelope in which he placed the rock and on which he wrote the time, date, location and seller. R.p. 86. He kept this envelope in his pocket until he met Dep. Ketchum at the pre-arranged location and released it to him. R.p. 87. According to Dep. Ketchum, the agents handed him the rock in a plain manila envelope, on which information about the sale was written. He transferred the rock to an evidence envelope, which had lines printed on the outside. R.p. 140. He copied the sale information onto the evidence envelope, and testified he returned the plain envelope to Dep. Wilson; the latter was not introduced in evidence. R.p. 167. He then sealed the evidence envelope and kept it in the evidence locker until he released it to Dep. Raley for transport to the crime lab. Dep. Raley verified that he signed for the envelope on January 10, 1994 at 9:30 a.m., and delivered it to the lab at 10:53 a.m. the same day. The evidence transfer receipt bears a number, "NW 106-94-1," which remained on the container throughout analysis and trial. Every subsequent transfer was verified by similar receipt. The crime lab found that the rock was indeed crack cocaine; a certificate was introduced as Exhibit S-7 and admitted pursuant to La.R.S. 15:499-501.
When Dep. Ketchum opened the evidence envelope at trial, he found in it both the rock of cocaine and a handwritten note (Exhibit S-6). He testified that when Wilson first gave him the rock, it was wrapped in this paper, and Wilson may have written on it while he (Ketchum) was examining the rock. R.pp. 163-164. Dep. Wilson was recalled to testify and stated, for the first time, that he wrote this note when they met Dep. Ketchum at the pre-arranged location; he told Ketchum to keep it in the evidence envelope. R.p. 194-195.
To admit demonstrative evidence at trial, the law requires that the object be identified. Identification may be visual, that is, by testimony that the object exhibited is the one related to the case; and it can be by chain of custody. State v. Sweeney, 443 So.2d 522 (La.1983). The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered. The State need only establish by a preponderance of evidence that the object is the one connected with the case. State v. Sweeney, supra; State v. Hall, 549 So.2d 373 (La.App.2d Cir.1989), writ denied 556 So.2d 1259 (1990).
We have closely reviewed the evidence and conclude that the loss of the first envelope is of no moment, as the testimony *1115 clearly shows that the rock originally placed therein was the same rock that Dep. Ketchum sealed in the evidence envelope. The disposal of the plain envelope, with notes written on it, casts no doubt on the identity of the rock. Further, the deputies' failure to mention the handwritten note (Exhibit S-6) is, under the circumstances, relatively minor. Dep. Wilson's apparent memory lapse does not create any serious doubt as to the identity of the rock, and his subsequent explanation of Exhibit S-6's presence corroborates Dep. Ketchum's testimony about how it got in the evidence envelope. Finally, the evidence transfer receipts following the rock from the evidence locker to the crime lab, back to the evidence locker and into the courtroom, are entirely in order. State v. Hall, 549 So.2d at 393. The evidence proves by a preponderance that the rock introduced at trial was the same rock that Baker sold to Dep. Wilson and determined by the crime lab to contain crack cocaine. These assignments lack merit.

Motion for mistrial
By his 13th specification, Baker urges the district court should have granted a mistrial, as requested by the defendant at trial, when the prosecutor made the following argument at the conclusion of his rebuttal:
This is the rock of cocaine that that Defendant sold January 7, 1994, to Captain Saul Wilson. This type of activity is poisoning our kids and our friends and our society. I don't ask you to convict people here, to cure up that problem for no reason. We submit to you that we've proved every element of this case beyond a reasonable doubt and that that is why you should vote to convict this Defendant of distribution of cocaine as charged. That reason and that's the only reason. Thank you.
R.p. 300.
The record reflects that after the prosecutor concluded, defense counsel addressed the court, and a bench conference was held. The court then charged the jury and sent them to deliberate. Defense counsel then stated he would object on the record for the reason advanced at the bench conferencethat the argument was improper as the prosecutor did not clearly state it was his opinion that the rock involved was cocaine, allegedly in violation of State v. Kaufman, 304 So.2d 300 (La.1974). R.pp. 308, 310. The court stated that since the jury had retired, the objection could be construed only as a motion for mistrial; counsel agreed. The court denied the motion for mistrial. R.p. 310.
The State urges in brief that Baker may not raise this argument because he failed to raise a contemporaneous objection. La.C.Cr.P. art. 841. It is true that a timely objection may have enabled the court to admonish the jury and thus minimize the potential prejudice. However, the defendant did object to improper remarks and the objection was overruled; we will therefore treat the issue as a motion for mistrial. State v. Hopkins, 626 So.2d 820 (La.App.2d Cir.1993); State v. Deal, 607 So.2d 641 (La.App.3d Cir. 1992), writ denied 612 So.2d 65 (1993). Mistrial is a drastic measure to be granted only when the prejudice resulting from in-court conduct deprives the defendant of any reasonable expectation of a fair trial. State v. Smith, 433 So.2d 688 (La.1983); State v. Hopkins, supra.
Argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. La.C.Cr.P. art. 774; State v. Eaton, 524 So.2d 1194 (La.1988), cert. denied 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989). Prosecutors should not turn closing argument into a plebiscite on crime by making overt references to community sentiment. State v. Deboue, 552 So.2d 355 (La.1989); State v. Sugar, 408 So.2d 1329 (La.1982). Improper or allegedly prejudicial argument requires reversal when it is probable that the jury's verdict was influenced by the remarks. State v. Deboue, supra. Before a verdict approved by the judge is set aside on the ground of improper argument, the reviewing court must be "thoroughly convinced" that the jury was influenced by the remarks, and that they contributed to the verdict. State v. Martin, 93-0285 *1116 (La. 10/17/94), 645 So.2d 190, cert. denied ___ U.S. ___, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995); State v. Chaffin, 324 So.2d 369 (La. 1976), cert. denied 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976).
The contested argument must be viewed in light of the record evidence. Deps. Wilson and Pichon positively identified Baker as the man who sold them the cocaine; Baker himself denied doing it, but he and the defense witnesses were unsure where he was on the night of January 7, 1994. Lab analysis proved that the rock was indeed crack cocaine. Thus the prosecutor's remark, "This is the rock of cocaine that that Defendant sold January 7, 1994 to Captain Saul Wilson," was a conclusion reasonably drawn from the evidence. It was not improper.
Baker did not object to the prosecutor's next sentence ("this type of activity is poisoning our kids and our friends and our society"), so it is not properly before this court. La.C.Cr.P. art. 841; State v. Baylis, 388 So.2d 713, 720 (La.1980). Out of abundant caution, however, we would note that in the context of the entire argument (the prosecutor's contention that "we've proved every element of this case" and "that is why you should vote to convict"), the court's jury charge, and the strength of the evidence, we cannot say these remarks influenced the jury or contributed to the verdict.[7] In fact, the remark is less extensive and vigorous than those found permissible in State v. Chaffin, supra, State v. Deal, supra, and Jones v. Butler, 864 F.2d 348 (5th Cir.1988), cert. denied 490 U.S. 1075, 109 S.Ct. 2090, 104 L.Ed.2d 653 (1989). This specification lacks merit.

Constitutionality of the statute of conviction
By five specifications of error, Baker urges that the law under which he was sentenced is unconstitutional because it is vague and over inclusive.[8] The argument is advanced by an appendix attached to his original brief and by reply to the amicus curiae brief filed by the Louisiana Attorney General pursuant to La. Const. art. 4, § 8.
Baker concedes that this court has already considered, discussed in extenso and rejected the argument (advanced by the same counsel as represents Baker) that the definition of "distribute" contained in R.S. 40:961(13) is vague and overbroad. See State v. Thomas, 26,116 (La.App.2d Cir. 6/22/94), 639 So.2d 408, writ denied 94-2332 (La. 1/13/95), 648 So.2d 1337; State v. Fairley, 25,951 (La.App.2d Cir. 5/4/94) 645 So.2d 213, writs denied 94-1940 (La. 11/11/94), 645 So.2d 1152, 94-2909 (La. 3/24/95), 651 So.2d 287. The present argument shows us nothing to dissuade us from our prior analysis and resolution of the issue; we reaffirm the holdings of State v. Thomas and State v. Fairley, supra. These specifications of error lack merit.

Conclusion
We have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2). Barry Baker's conviction and sentence are therefore affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS, HIGHTOWER and BROWN, JJ.
Rehearing denied.
NOTES
[1] Specification 4, concerning the denial of a requested jury instruction, was neither briefed nor argued; it is deemed abandoned. URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App.2d Cir.1989), writ denied 558 So.2d 1123 (1990). Specifications 7, 8 and 10 have been expressly abandoned in brief. Br., 20-21.
[2] The definitions of "distribute" and "delivery" have subsequently been redesignated as R.S. 40:961(14) and (10) respectively. La.Acts 1994, 3d Ex.Sess., No. 34.
[3] Defense counsel intimated, in his questioning of Ms. Crawley and of the defendant, that Baker quit wearing regular pants when his house burned. R.pp. 234, 242. However, neither witness stated when the house burned down.
[4] In Gipson this court reversed a drug conviction largely because there was nothing to corroborate the testimony of the undercover agent, who acted alone, and much to question the reliability of his identification of the defendant. In the instant case, Dep. Pichon corroborated Dep. Wilson's account; both picked Baker from a photo line-up before trial; Dep. Wilson saw Baker subsequently in March 1994 (R.p. 88); and there was no suggestion that Baker had changed in appearance between the date of the crime and trial (Gipson had gained some 50 lbs.).
[5] The issue of the State's refusal to name the CI is addressed in the discussion of Specification 9.
[6] Under R.S. 40:973 B, certain persons "shall not be required to obtain a license and may lawfully possess controlled dangerous substances." These persons include (1) an agent, or his employee, of any registered manufacturer, distributor or dispenser of any CDS if such agent or employee is acting in the usual course of his business or employment; (2) a common or contract carrier or warehouseman, or his employee, whose possession or any CDS is in the usual course of his business or employment; and (3) an ultimate user of person in possession of any CDS pursuant to a lawful order of a practitioner.
[7] At the close of evidence, the court instructed the jury, "Statements made by the attorneys at any time during the trial are not evidence. * * * [T]he opening statements and closing arguments are not to be considered evidence." R.p. 303. In addition, the court advised the jury before the presentation of evidence, "What the lawyers say in closing arguments is not evidence." R.p. 54.
[8] Specifications 14 and 15 raise the question directly; specifications 3, 5 and 6 urge that Baker's motions to quash, in arrest of judgment and for new trial, respectively, should have been granted because the statute was unconstitutional.