663 So.2d 271 (1995)
STATE of Louisiana
v.
Dwight SPENCER.
Nos. CR95-208, CR95-328.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*272 Bernard E. Boudreaux, Jr., Dist. Atty., Ralph Kenneth Lee, Jr., New Iberia, for Plaintiff-Appellee State of Louisiana.
Gary F. LeGros, Jr., Jeanerette, for Defendant-Appellant Dwight James Spencer.
*273 Before SAUNDERS, SULLIVAN and KNIGHT[*], JJ.
SULLIVAN, Judge.
The defendant, Dwight Spencer, was charged by bill of information with aggravated burglary in violation of La.R.S. 14:60 and aggravated oral sexual battery in violation of La.R.S. 14:43.4. The charges were severed, with the defendant's burglary trial beginning on July 26, 1994. At the conclusion of the trial, a twelve member jury unanimously found the defendant guilty. On August 9, 1994, the defendant was sentenced to thirty (30) years at hard labor. On October 31, 1994, the defendant was convicted as a habitual felony offender, third offense, and sentenced to sixty (60) years at hard labor without benefit of parole, probation or suspension of sentence. On appeal, the defendant asserts eight assignments of error, three of which have been abandoned.

FACTS
During the daylight hours of November 12, 1993, eighteen-year-old Jeanne LaSalle returned to her New Iberia home, where she interrupted a burglary in progress. The intruder forced her to perform manual and oral sex on him, then fled with several pieces of jewelry taken from the residence and from LaSalle's person.
During the subsequent investigation, the police recovered a partial fingerprint from a glass jewelry box and semen samples on the victim's shirt and on a toy car in the room where the attack occurred. The victim identified the defendant, Dwight Spencer, as her attacker in a photographic lineup, and expert testimony linked the defendant to the fingerprint and semen samples recovered from the crime scene.

LINE-UP IDENTIFICATION
By this assignment, the defendant alleges that the victim's identification of him in a photographic line-up was unduly suggestive and that the DNA evidence connecting him to the crime was the direct result of this improper identification.
The defendant points out that the victim initially failed to recognize a photograph of him, taken when he was younger, out of approximately 100 mug shots. Four days later, when the victim viewed six (6) more photographs, she recognized more recent pictures of the defendant. The defendant also points out that the victim initially described her attacker as being five feet, eleven inches tall, whereas he is only five feet, eight inches tall.
A defendant seeking to suppress an identification has the burden of proving that the identification was suggestive and that the procedure used created the likelihood of misidentification. State v. Romero, 552 So.2d 45 (La.App. 3 Cir.1989), writ denied, 559 So.2d 137 (La.1990).
After reviewing the record, we find that the defendant has not met this burden. Both the victim and the investigator, Detective Kerry LeBlanc, testified that no suggestions were made to the victim during either line-up identification and that the defendant's pictures were not singled out. The photograph in the original line-up did not reflect the defendant's true appearance at the time of the crime, and the three inch mistake in the victim's description of her attacker's height is understandable, considering the circumstances of the encounter. We find no merit in this assignment of error.

FINGERPRINT EVIDENCE
The defendant next argues that the trial court erred in allowing the introduction of fingerprint evidence because a continuous chain of custody was not established. The defendant shows that the only latent print taken from the crime scene remained in Detective LeBlanc's file for approximately eight months before it was sent to the crime lab for identification.
It is well settled that a continuous chain of custody need not be established if the evidence as a whole shows, more probably than not, that the object introduced at trial is the same as the object originally *274 seized, and any defects in the "chain" go to weight, not admissibility. State v. Guillory, 438 So.2d 1256 (La.App. 3 Cir.1983).
Detective LeBlanc testified that he recovered a fingerprint from a beveled-top glass jewelry box in the victim's home. At the time, he apparently thought the print was too smudged to be used for comparison purposes. When the print was lifted with scotch tape, it retained the beveled design from the jewelry box. Detective LeBlanc kept the print in his case file, and shortly before trial, sent it to Sergeant Bill Delahoussaye of the Lafayette Metro Crime Scene Unit for identification. At trial, Sergeant Delahoussaye testified that the latent print on the scotch tape contained at least twenty points of comparison with the known fingerprint of the defendant.
From the facts adduced at trial, we find it more probable than not that the fingerprint used for analysis was the same one lifted at the crime scene. The latent print kept in Detective LeBlanc's case file retained the beveled markings and smudges it had when it was first lifted. Although the file was not locked and other detectives had access to it, the file was not accessible to the general public. Furthermore, any defect in the chain of custody goes to the weight of the evidence and not its admissibility; the factfinder properly determined what weight, if any, was to be given this evidence.
This assignment lacks merit.

DNA EVIDENCE
The defendant next argues that the DNA test results should not have been admitted into evidence because no safeguards have been promulgated to insure the accuracy of the particular genetic test used in this case.
Dr. Sudhir K. Sinha, the director of GenTest Laboratories, Inc. in Metairie, Louisiana, testified that the newer polymerase chain reaction (PCR) test was performed in this case rather than the slightly older restriction fragment length polymorphism (RFLP) method. Dr. Sinha explained that the PCR test is used when there is not enough DNA material to perform the RFLP test. The RFLP test has been widely used since 1984, whereas the PCR test has been available since 1989, but only recently has been used nationally.
La.R.S. 15:441.1 states:
Evidence of deoxyribonucleic acid profiles, genetic markers of the blood, and secretor status of the saliva offered to establish the identity of the offender of any crime is relevant as proof in conformity with the Louisiana Code of Evidence.
Defendant relies on State v. Rowell, 517 So.2d 799 (La.1988) to argue that because the PCR method was not widely used when the above statute was passed, this testing was not contemplated by the statute's authors. Such test results, the defendant argues, are therefore irrelevant because of their inherent unreliability. We are not persuaded by defendant's reliance on Rowell.
In Rowell, the supreme court held that regulations promulgated by the state regarding gas chromatography, or the chemical analysis of blood, did not sufficiently insure the test's integrity and reliability. This holding was based in part on the highly prejudicial effect of the wrongful introduction of the test results and on the statutory presumption of intoxication that applies to a certain test result. La.R.S. 32:662 A(1)(c).
La.R.S. 15:441.1, in contrast, attaches no legal presumption to a particular DNA test result. The statute only states a general policy that such evidence is relevant. Further, this court has already recognized the extremely prejudicial effect of DNA testing and has held that a defendant is entitled to pre-trial hearing on the admissibility of DNA test results, if such a hearing is requested. State v. Charles, 602 So.2d 15 (La. App. 3 Cir.1992), writ granted in part and amended, 607 So.2d 566 (La.1992). The burden of proving the admissibility of the DNA test results rests with the state. State v. Charles, 617 So.2d 895 (La.1993).
Such a hearing permits the trial court to exercise its "gatekeeping" function when called to rule upon the admissibility of expert testimony. State v. Foret, 628 So.2d 1116 (La.1993), citing Daubert v. Merrell Dow Pharmaceuticals, Inc., ___ U.S. ___, *275 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In order to be admissible, the expert testimony must be reliable. The reliability of the expert testimony is insured by a requirement that there be a valid scientific connection to the pertinent inquiry as a precondition to admissibility. This connection is to be examined in light of a preliminary assessment by the trial court of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts in issue. In fulfilling its gatekeeping role, the trial court can inquire into several factors, with the Frye v. U.S., [54 App.D.C. 46, 293 F. 1013 (1923)] test of general acceptance in the scientific community as only one factor in the analysis. The court must also conduct a balancing test that will exclude probative evidence if outweighed by its potential for unfair prejudice. State v. Foret, 628 So.2d 1116.
Judge Plotkin, in a scholarly concurrence to State v. Quatrevingt, 617 So.2d 484 (La. App. 4 Cir.1992), proposed that the trial court consider the following questions in ruling on the admissibility of DNA testing:
(1) Whether the testing facility is properly qualified to conduct the DNA analysis;
(2) Whether the facts relied upon by the testing facility are relied upon by other experts in the field;
(3) Whether the testing facility conducts the analysis using well-founded methodology and procedures;
(4) Whether the DNA evidence's potential for unfair prejudice substantially outweighs its probative value.
Id. at 499.
In the instant case, the testimony adduced at the pre-trial hearing provides strong support for the trial judge's decision to admit the DNA test results. Dr. Sinha testified extensively regarding the credentials of his testing facility and the strict controls used to insure the accuracy of his work. GenTest Laboratories, Inc. performs both paternity testing and forensic work. The facility is accredited by the American Association of Blood Banks, which has reviewed the written set of protocols that Dr. Sinha has developed for his lab. In blind proficiency tests by the College of American Pathologists, GenTest has been 100% accurate during the four years that it has been in operation. All forensic chemists employed by the facility have master's degrees. Regarding the PCR test, Dr. Sinha testified that he began using the test in 1989 for forensic work. At that time, only two or three other labs were using this test; however, Dr. Sinha now estimates that over 40 labs nationwide are now using PCR. He understands that every forensic lab in the country not using PCR is nonetheless going through their validation studies to use PCR. Additionally, Dr. Sinha himself conducted or reviewed all testing done in this case.
We find no merit to this assignment of error.

EXCESSIVE SENTENCE
In this assignment, the defendant concedes his 60-year sentence as a third time felony offender falls within the statutory scheme; nonetheless he argues that this penalty is constitutionally excessive. Defense counsel preserved this issue for appeal by orally objecting to the penalty imposed, with the specific grounds for the objection set forth at the time of sentencing. See State v. Caldwell, 620 So.2d 859 (La.1993).
Article 1, § 20 of the Louisiana Constitution of 1974, prohibits, "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3 Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir. 1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of *276 discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
The Legislature has provided criteria to aid a sentencing court in determining whether a sentence of imprisonment should be imposed and whether suspension of a sentence or probation is warranted. La. Code Crim.P. Art. 894.1; State v. Klause, 525 So.2d 1076 (La.App. 3 Cir.1988). Paragraph (C) of Article 894.1 requires the court to state for the record any aggravating and mitigating circumstances which may be present and the factual basis therefor when imposing a sentence. The trial court need not refer to every aggravating and mitigating circumstance in order to comply with the article. However, the record must affirmatively reflect that adequate consideration was given to the codal guidelines in particularizing the defendant's sentence. State v. Smith, 433 So.2d 688 (La.1983).
Additionally, the Louisiana Sentencing Guidelines, promulgated pursuant to 894.1, are advisory rather than mandatory. State v. Smith, 639 So.2d 237 (La.1994).
Sentencing the defendant on the multiple offender conviction, the trial judge stated:
All right. I have the unpleasant duty to resentence you in this case. I have read, again, the sentencing guidelines which the legislature provides, and I have also read the recommendations in Article 894.1 which says that when a defendant has been convicted of a felony, the Court should impose a sentence of imprisonment if there is an undue risk that during the period of a suspended sentence or probation, the defendant will commit another crime, and that the defendant is in need of correctional treatment, or a custodial environment that can be provided most effectively by his commitment to an institution.
Mr. Spencer, you're in your thirties, and you have lived a life of crime. The State has proven, at least, that you're a third offender, yet the minute records will show that you had been involved in other offenses. You were actually on probation when you committed this crimeon parole. And I just can't think of an appropriate sentence in the sense that if I don't put you in jail, it's obvious to me that you will commit another crime.
The defendant's prior convictions used as enhancement were for purse snatching and simple burglary. The instant offense, aggravated burglary, included a sexual assault on his victim. The defendant was on parole when he committed his latest offense. The defendant's criminal history exhibits contempt for the legal system and the rights of others, as well as a pattern of escalating dangerousness. Further, the record indicates that the trial court considered all appropriate guidelines. We find no error in the sentence imposed by the trial court.

ERRORS PATENT
La.Code Crim.P. art. 880 provides that when imposing sentence the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. The record indicates the trial court did not do so. Resentencing is not required; however, this court remands and orders the district court to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561.
Additionally, a review of the record of defendant's habitual offender proceeding indicates he was not advised of his right to remain silent. Although this is an error patent, it does not require reversal if the state proves by competent evidence at the multiple offender hearing that the defendant was the same person convicted of the predicate offense(s). State v. Jackson, 563 So.2d 1362 (La.App. 3 Cir.1990). In the instant case, the state met this burden; therefore, any error was harmless.

DECREE
The defendant's conviction and sentence are affirmed. The case is remanded and the district court is ordered to amend the commitment and minute entry to reflect that the defendant is given credit for time served in accordance with La.Code Crim.P. arts. 880, 882 A.
*277 AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[*] Judge William N. Knight of the Thirty-first Judicial District participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.