683 So.2d 1292 (1996)
STATE of Louisiana, Appellee,
v.
Charles Edward GREEN, Sr., Defendant-Appellant.
No. CR96-208.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
*1293 Charles F. Wagner, District Attorney, for State of Louisiana.
John Michael Lawrence, New Orleans, Charles Edward Green Sr., for Charles Edward Green Sr.
Before DOUCET, C.J., SAUNDERS and AMY, JJ.
AMY, Judge.
Defendant was convicted of possession of a controlled substance, cocaine, in violation of La.R.S. 40:967(C). Defendant was also convicted as a second felony offender, in violation of La.R.S. 15:529.1A(1)(a). Defendant was then sentenced by the trial court to nine years at hard labor to run concurrent with *1294 any other sentence that defendant was serving. Defendant appeals his conviction and sentence. Finding no error on the part of the trial court, we affirm.

DISCUSSION OF THE RECORD
On February 18, 1994, defendant, Charles Edward Green, Sr., was arrested after Officer Ron Kendrick Johnson of the Alexandria City Police found defendant in possession of cocaine.[1] Defendant was charged by bill of information with possession of cocaine with the intent to distribute, in violation of La. R.S. 40:967. On April 22, 1994, defendant appeared before the court with court-appointed counsel for arraignment, waived formal reading of the bill of information and entered a plea of not guilty to the charge. On February 7, 1995, after a bench trial, the trial court found defendant guilty of the lesser offense of possession of a controlled dangerous substance, schedule II. Three days later, the state filed a habitual offender bill against defendant charging him to be a second felony offender. On February 14, 1995, defendant was sentenced as a second felony offender to nine years at hard labor to run concurrent to any other sentence defendant was serving. Defendant now appeals his conviction and sentence.

ERRORS PATENT
La.Code Crim.P. art. 920, which provides the scope of review on appeal, states:
The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence.
In accordance with this article, we review all appeals for errors patent on the face of the record. However, after reviewing the record, we conclude that there are no errors patent.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant argues the trial court erred in denying all of his pre-trial and post trial motions and objections. But, in defendant's brief, he specifically argues that the trial court erred in denying his motion to suppress the ten rocks of cocaine. Defendant insists that the police officers did not have probable cause to believe that he had cocaine in his possession. Therefore, defendant asserts, the police officer's search of him and the resulting seizure of cocaine should have been suppressed. Defendant argues that the police officers' testimony on the issue of probable cause was not credible, but, on the other hand, was based on deceit and deception.
"In determining the legal correctness of the trial court's ruling on a defendant's motion to suppress, a reviewing court is not limited to evidence adduced at the hearing on that motion; it may also consider all pertinent evidence given at the trial of the case." State v. Guidry, 94-678, p. 6 (La.App. 3 Cir. 12/7/94); 647 So.2d 502, 507.
Officers Ron Kendrick Johnson and Christopher Ryder testified on behalf of the state.[2] Officers Johnson and Ryder stated that they were working on the street level narcotics team, which was an interdiction team to keep drug dealers off the street. They testified that, on February 18, 1994, at approximately 3:49 p.m., they went to the area of Third Street, Broadway and Scallan Street in Alexandria, Louisiana because at roll call they were informed of complaints about drugs being sold in that area.
While investigating the area, the officers testified that they encountered defendant and a group of people in a vacant lot. The officers stated that they took down the names of the people in the group, patted them down and asked them to leave the area, which they did. The officers then stated that they searched the vacant lot next to 318 Scallan Street, and that Officer Johnson found a white rectangular shaped Tic-Tac *1295 type bottle underneath a tire. Officer Johnson testified there were ten rocks of suspected crack cocaine in the container. At that point, Officer Johnson noted that he counted the drugs, placed five of the rocks in an envelope and returned five rocks to the container, placed his initials and badge number on the container, and then placed the container back under the tire. Officer Ryder testified he saw Officer Johnson place the container back under the tire. After Officer Johnson placed the container under the tire, the officers testified that they continued their investigation, then left the scene to park the police car at Peabody Sixth Grade Center on the next street behind the house at 318 Scallan.
The officers testified that they then hid in the bushes behind the house at 318 Scallan to watch the tire and observed defendant and the group reappear by the vacant lot and house. The officers noticed defendant approach a four door car occupied by two females then go to the tire and pick up the container with the suspected crack cocaine. As defendant walked away from the tire with the container, the officers surfaced from behind the bushes with Officer Johnson approaching defendant and Officer Ryder heading toward the tire to see if the container was still there. Officer Johnson testified that he grabbed the container out of defendant's right hand, thinking that defendant was about to throw the container, and arrested defendant. Officer Ryder testified that he looked under the tire but did not find the container. Officer Ryder further stated that he did not see the container until after Officer Johnson arrested defendant and showed him the container. Officer Ryder then stated that he put the container into an envelope. Both officers testified that the container marked S-2 was the container Officer Johnson found under the tire and took from defendant. Finally, Officer Johnson also made an in court identification of defendant as the person he arrested on February 18, 1994.
Defendant, his brother, Roosevelt Green, Livingston Page, Bobby Dixon, Delas Davis, and Vernon Williams testified on behalf of defendant.[3] None of the defense witnesses testified that they made a complaint about drugs being sold in the area nor did they see a brown four door car stop in the road. The defense witnesses testified that, when the police officers arrived they searched all of them, including defendant, and told them to leave for thirty minutes. The defense witnesses further testified that the officers then began searching the vacant lot. Livingston Page, the person identified by the police officers as the confidential informant, testified that the police officers searched for drugs in the vacant lot next to the house located at 318 Scallan Street where they play poker. Roosevelt Green testified that the lot belonged to his ex-mother-in-law. Page and Bobby Dixon both testified that an officer looked under the tire and said "bingo." Page also testified the officer approached him, told him he found drugs under the tire, and to not say anything as he was going to make a drug bust.
Page, Davis, Williams, and Green testified that, when they went back to the area, J.W. Iles, now deceased, told the officers to come from behind the house because there were no drugs back there. The defense witnesses stated after Officer Johnson came from behind the house, defendant was arrested. Williams testified that it was daylight and he was standing next to defendant when he saw Officer Johnson pull out a brown envelope from his pocket and pour rocks of crack cocaine into an empty plastic Tic-Tac type container when defendant was arrested. Williams also testified he did not see defendant hold a container in his hands nor go to a tire nor did he see Officer Johnson go near the tire or go in the vacant lot.
Green testified that he saw defendant with a Tic-Tac type container in his hand when Officer Johnson, in daylight, pulled out a brown envelope and poured something into the empty Tic-Tac type container, similar to State exhibit number 2. However, Green admitted that he did not know what Officer Johnson poured into the container. Further, Green acknowledged that he did not know if Officer Johnson went to the tire prior *1296 to defendant nor did he see defendant get the container from the tire. But, Green testified that he did see defendant by the tire when defendant had the container.
Davis testified that he did not see Officer Johnson search defendant nor take or possess any drugs, nor did he see defendant go to the tire. However, Davis testified that when he arrived back to the area with Iles, he saw Officer Johnson approach defendant and defendant shake a Tic-Tac type container in his hand, similar to State exhibit number 2, saying it was empty.
Unlike the other defense witnesses, Page testified he saw defendant hold an empty container with a screw top, not one like State exhibit number 2. Neither Page nor Dixon saw defendant go to the tire and pick something up.
Defendant testified he did not go near the tire nor take anything out of the tire. Defendant admitted to having a Tic-Tac bottle, but denied having the bottle which was marked State exhibit number 2. Even though defendant testified he did not have State exhibit number two, defendant testified he saw Officer Johnson pour something from an envelope into the container he took from him.
The trial judge, in denying defendant's motion to suppress the physical evidence of cocaine, stated in part that:
In this case there was a seizure of ten rocks of crack cocaine. The seizure was affected without a warrant and must therefore be classified as a warrantless search and seizure, meaning the burden of proof shifts to the State of Louisiana to prove the validity of the search and seizure. In its efforts to prove the validity of the search and seizure the State of Louisiana called one witness Office [sic] Kevin Johnson who had been with the Alexandria City Police for six years. Officer Johnson testified that he was working on February 18, 1994 on the street drug team. He testified that prior to going on his shift there was a meeting of officers and his supervisor designated certain target areas in the city which areas had been reported by residents as being drug dealing areas.
The officer went toon February 18, 1994, the officer went to Scallon Street near its intersection with Broadway which was one of the target areas designated at the briefing of the officers. Officer Johnson testified that there were numerous individuals standing around in the area when he approached with another officer. He dispersed the crowd in the area and stated that there had been some information obtained that the drugs were being hidden on a vacant lot and then retrieved and sold at the curb side in that area.
He and other officers made a search of the area and he found at or near a spare tire on the vacant lot a small Tick-Tac bottle. Upon examination that Tic-Tac bottle contained ten rocks of suspected crack cocaine. Officer Johnson testified that he took five of the rocks and put them in a brown evidence envelope which he carried on his person and held them for testing. He marked the container with his initials and his badge number and relocated it at or near the spare tire on the vacant lot with the container still holding five rocks of crack cocaine. Officer Johnson testified that he and another officer then hid themselves behind obstructions, bushes, and waited watching the Tic-Tac container.
Officer Johnson testified that some time later the individuals that he had dispersed returned to the area and an automobile stopped in the street. It was approached by the defendant, GreenCharles Edward Green who carried on a conversation with two white females. Charles Edward Green left the vehicle entered the vacant lot and picked up the Tick-Tac container, whereupon the officers moved in for the arrest. The defendant started to throw the container away when he was stopped by the officer. The State then made the arrest or the officer made the arrest and the State rested its case on the motion to suppress.
The defendant called a number of witnesses to the stand. Their stories were somewhat disjointed and did not totally fit together with the testimony of Officer Johnson. However, Officer Johnson's testimony finds some support in the testimony *1297 of each of the witnesses called by the defense.
Mr. Page testified that he saw the officer look under the tire and around the tire and exclaimed, "bingo". Officer Johnson finding something around the tire was also supported by the testimony of Mr. Bobby Dixon.
Mr. Dixon and Mr. Page testified that they saw the officers searching the vacant lot. Delas Davis testified that he was present at the time that the police had asked them to leave for a time and that he did move on. That he filtered back into the area and that he did see the defendant, Mr. Green, with a Tic-Tac bottle although he contends that he thought the bottle was empty, that it was an empty container.
Mr. Vernon Williams took the stand and testified that he had seen Officer Johnson pour rock cocaine into the container. And this was testified to by Mr. Green's brother who likewise testified. These statements to some extent support the testimony of Officer Johnson that he did in fact take five of the rocks of cocaine from the container and put it in a brown envelope.
The Court finds the testimony of Officer Johnson to be credible and the Court accepts his testimony. The Court finds that the Tic-Tac bottle left lying by the side of the spare tire in a vacant lot is a[sic] abandoned piece of property and that no one has an expectation of privacy to a container so situated.
A determination of the weight of evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witness and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987).
A fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Where rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all evidence most favorable to the prosecution must be adopted on review. Only irrational decisions to convict by the trier of fact will be overturned. See State v. Mussall, 523 So.2d 1305 (La.1988). Determination of credibility will not be disturbed on appeal in the absence of manifest error. State v. Sanders, 542 So.2d 1134 (La.App. 3 Cir.1989).
The trial court chose to believe Officer Johnson's testimony and we cannot conclude that this was manifestly erroneous. Accordingly, we conclude that the trial court did not abuse its discretion because sufficient testimony was presented for a rational trier of fact to conclude that the police officers had probable cause to believe defendant was possessing drugs. Therefore, we find that defendant's argument on this issue to be without merit.
Second, defendant also argues that the trial court erred in denying his motion to suppress because he contends that his arrest was based on a pretext to stop and search him without a supporting warrant. We disagree.
The Fourth Amendment of the United States Constitution and Article 1, Sec. 5 of the Louisiana Constitution protects people against unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983). This protection is based upon every person's right to privacy. Violation of a person's right to privacy requires the exclusion of evidence obtained in violation of a person's constitutional rights. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
A search conducted without a warrant issued upon probable cause is normally per se unreasonable, subject only to specifically established and well delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Church, 538 So.2d 993 (La.1989); State v. *1298 Raheem, 464 So.2d 293 (La.1985). In order to justify a warrantless search and seizure, the state bears the burden of proving that the search falls into one of the narrowly drawn exceptions to the warrant requirement. La.Code Crim.P. art. 703(D); State v. Harmon, 594 So.2d 1054 (La.App. 3 Cir.), writs denied, 609 So.2d 222 (La.1992), 623 So.2d 1326 (La.1993). These exceptions to the warrant requirement are based in part upon a person's diminished expectation in privacy. In other words, constitutional protection against an unreasonable search will not be extended where the facts indicate that there is no reasonable expectation of privacy. See State v. Byers, 359 So.2d 84 (La.1978); State v. Broussard, 560 So.2d 694 (La.App. 3 Cir.), writ denied, 566 So.2d 981 (La.1990).
In Oliver v. United States, 466 U.S. 170, 178-181, 104 S.Ct. 1735, 1741-1742, 80 L.Ed.2d 214 (1984), the United States Supreme Court explained the "open field" exception to the warrant requirement:
In this light, the rule of Hester v. United States, supra, that we reaffirm today, may be understood as providing that an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home. This rule is true to the conception of the right to privacy embodied in the Fourth Amendment. The Amendment reflects the recognition of the Framers that certain enclaves should be free from arbitrary government interference. For example, the Court since the enactment of the Fourth Amendment has stressed "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic."
In contrast, open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields. Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. It is not generally true that fences or "No Trespassing" signs effectively bar the public from viewing open fields in rural areas....
The historical underpinnings of the open fields doctrine also demonstrate that the doctrine is consistent with respect for "reasonable expectations of privacy." As Justice Holmes, writing for the Court, observed in Hester, 265 U.S., at 59, 44 S.Ct., at 446, the common law distinguished "open fields" from the "curtilage," the land immediately surrounding and associated with the home. The distinction implies that only the curtilage, not the neighboring open fields, warrants the Fourth Amendment protections that attach to the home. At common law, the curtilage is the area to which extends the intimate activity associated with the "sanctity of a man's home and privacies of life," and therefore has been considered part of home itself for Fourth Amendment purposes....
We conclude, from the text of the Fourth Amendment and from the historical and contemporary understanding of its purposes, that an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers.
(citations and footnotes omitted). See also U.S. v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); State v. Brown, 395 So.2d 1301 (La.1981); State v. Brown, 598 So.2d 565 (La.App. 4 Cir.), writ denied, 605 So.2d 1092 (La.1992); State v. Broussard, 560 So.2d 694 (La.App. 3 Cir.), writ denied, 566 So.2d 981 (La.1990); State v. Magouirk, 539 So.2d 50 (La.App. 2 Cir.1988).
In the present case, the evidence sought to be introduced, a Tic-Tac type rectangular shaped container, was first discovered in a vacant lot by Officer Johnson who placed his initials and badge number on it. The container was next seen in and recovered from defendant's hands by Officer Johnson who saw defendant retrieve the container from underneath a tire in the vacant lot. We conclude that a person would not have any reasonable expectation of privacy in regard to articles left in such a location. Accordingly, we conclude that state carried its burden *1299 of proving that the police officers' warrantless search came within the exception of the "open fields" doctrine. Therefore, we find that this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
By defendant's second assignment of error, he argues that the trial court erred in sentencing him without proper consideration for the sentencing guidelines provided in the Louisiana Code of Criminal Procedure. However, this assignment of error was not briefed nor argued by the defendant. Accordingly, we conclude that this assignment of error is abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

ASSIGNMENT OF ERROR NO. 3
By defendant's third assignment of error, he argues that the trial court erred in imposing a sentence which is unreasonable and excessive in light of the constitutional and statutory provisions of Louisiana as well as Louisiana jurisprudence, and in violation of the 8th Amendment to the U.S. Constitution which prohibits cruel and unusual punishment.
In State v. Mims, 619 So.2d 1059, 1059-1060 (La.1993), the Louisiana Supreme Court stated:
Under Article 881.1 the defendant must file a motion to reconsider and set forth the "specific grounds" upon which the motion is based in order to raise an objection to the sentence on appeal. However, in order to preserve a claim of constitutional excessiveness, the defendant need not allege any more specific ground than that the sentence is excessive. If the defendant does not allege any specific ground for excessiveness or present any argument or evidence not previously considered by the court at original sentencing, then the defendant does not lose the right to appeal the sentence; the defendant is simply relegated to having the appellate court consider the bare claim of excessiveness. Article 881.1 only precludes the defendant from presenting arguments to the court of appeal which were not presented to the trial court at a point in the proceedings when the trial court was in a position of correct the deficiency.
Therefore, under State v. Mims, a defendant can reserve his right to appellate review if he makes a bare allegation that his sentence was excessive. But, the appellate court will just consider the defendant's bare allegation of excessiveness if he does not set forth specific grounds. See State v. Davis, 27,961 (La.App. 2 Cir. 4/8/96); 672 So.2d 428; State v. Pyke, 95-919 (La.App. 3 Cir. 3/6/96); 670 So.2d 713. In State v. Green, 94-617 (La.App. 3 Cir. 12/7/94); 647 So.2d 536, we denied consideration of the defendant's excessiveness claim because there was no oral or written motion to reconsider sentence.
In the present case, defense counsel did not object to the sentence when sentence was pronounced nor did counsel file a Motion to Reconsider Sentence. Further, defense counsel made no objection to the excessiveness of the sentence. Therefore, we will not consider this assignment of error.

PRO-SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant argues that the trial court erred by allowing the state, over defense counsel's objection, to introduce the cocaine when it was shown that the state failed to maintain the direct chain of custody from the scene to the custodian and then to T.J. Shuflin for testing by the laboratory.
In State v. King, 471 So.2d 1181, 1183-1184 (La.App. 3 Cir.1985), we set forth the criteria for the admission of demonstrative evidence:
To admit demonstrative evidence at trial, the law requires that the object be identified either by in-court identification or by chain of custody. State v. Paster, 373 So.2d 170 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). A sufficient foundation has been laid for the admission of demonstrative evidence if it has been established that it is more probable than not that the object is the one connected with the case. State v. Smith, 430 So.2d 31 (La.1983). Ultimately, connexity of evidence *1300 is a factual matter for determination by the trier-of-fact. State v. Vaughn, 431 So.2d 763 (La.1983).
It is well settled that a continuous chain of custody need not be established if the evidence, as a whole, shows, more probably than not, that the object introduced is the same as the object originally seized and any defects in the chain of custody go to the weight of the evidence and not to its admissibility. State v. Spencer, 95-328 (La.App. 3 Cir. 10/4/95); 663 So.2d 271; State v. Shillow, 602 So.2d 28 (La.App. 3 Cir.1992); State v. Guillory, 438 So.2d 1256 (La.App. 3 Cir. 1983).
In the present case, the state gave notice of its intention to introduce the lab report at trial, but the defendant did not subpoena T.J. Shuflin, the preparer of the lab report. However, unlike State v. Wiley, 614 So.2d 862 (La.App. 2 Cir.1993), the preparer of the report testified in the present case. Thus, pursuant to State v. King, the prima facie proof of proper custody set forth in La.R.S. 15:501 was not operative.[4]
Officer Johnson testified he seized the container with the suspected cocaine from defendant's hand. Officer Ryder testified he took possession of the container with the suspected crack cocaine after Officer Johnson seized it from defendant's hand. At that point, Officer Ryder stated that he then placed the container into an envelope. He identified the envelope marked S-2 as the envelope he placed the container into and on which he also wrote the date of the offense. Officer Ryder testified he placed the envelope with the container and its contents into a locker at the police department.
Officer Newman Bobb, who worked for Metro Narcotics at the Alexandria Police Department, testified he received the sealed package one to three days after the initial arrest and that the package was stored in the Alexandria Police Department evidence locker between the time of the initial arrest and the day he received it. He identified his initials on the top red seal and T.J. Shuflin's initials on the bottom seal. He stated that he then opened the package to make sure the contents correspond to the police officer's handwriting and then he resealed the package before transporting it. Officer Bobb testified that he took State exhibit number 2 out of the Alexandria City Police evidence locker and then transported it to the crime lab. He stated the evidence was in his possession for about one day or so prior to him giving it to T.J. Shuflin, the crime analyst, on February 20, 1994, as noted on the crime lab report marked State exhibit number 3. Officer Bobb testified that the package at trial was the same package he obtained from the evidence locker.
T.J. Shuflin, who was employed by the North Louisiana Crime Lab, testified that he examined the contents of the package containing the NWA number of 299-94 that he received from Officer Bobb on February 28, 1994. Shuflin testified he received the package completely sealed with red evidence tape on the top and bottom. He stated that he then cut the bottom to open it at the time of analysis, noticed a plastic container containing several pieces of white substance, and removed the white substance to perform various tests and analysis on the substance. Shuflin testified that the results revealed the white substance from State exhibit number 2 was cocaine.
We note that there was a missing link in the chain of custody for the period of time in which the container with the suspected cocaine *1301 remained in the evidence locker for two to three days. But, after a review of the record, we conclude that the state presented sufficient evidence to prove, more probable more than not, that the cocaine presented into evidence at trial was the same taken from the possession of the defendant. See State v. Fann, 597 So.2d 1230 (La.App. 3 Cir.1992). Thus, we find that this pro-se assignment of error is without merit.

PRO-SE SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 4
By this assignment of error, defendant argues the trial court erred in allowing testimony by Officer Johnson referring to hearsay statements by an informant who told him there were drug deals taking place; thus, depriving defendant of a fair trial to confront and cross-examine the informant. We note in defendant's supplemental pro-se brief he refers to two informants, one who flagged down Officer Johnson and another who hinted and motioned Officer Johnson in the direction where the drugs could be found. Livingston Page was identified as being the latter confidential informant on two separate occasions: (1) at the motion to suppress hearing when Page testified he was sitting on the porch when an officer approached him to ask questions, although he denied hinting or motioning to the officer and (2) at trial when Officer Johnson testified he saw Page in court but only recognized him by sight, not by name. Since Livingston Page testified on behalf of defendant there was no error by the trial court as to this informant.
Regarding the other informant, the officers testified they went to the area of Third Street, Broadway and Scallan Street because at roll call they were informed of complaints about drugs being sold in the area. Officer Johnson testified that when he arrived at Third Street and Broadway, a confidential informant flagged him down near Scogin Auto Parts informing him that drug dealing was going on. This informant requested that he remain confidential in order to protect himself and his property.
Based on this information, Officer Johnson testified that he investigated a vacant lot behind Scogin Auto Parts. Officer Johnson testified defendant was not specifically mentioned at roll call as the person who was dealing drugs, but Officer Johnson did not remember if the confidential informant specifically named the defendant.
"`Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). Generally, hearsay is not admissible except as otherwise provided in the Louisiana Code of Evidence or by legislation. La.Code Evid. art. 802.
The substance of the out-of-court assertion Officer Johnson received from the informant did not significantly connect defendant with the crime but, explained the sequence of events leading to the arrest of defendant from the viewpoint of Officer Johnson. We conclude that Officer Johnson's testimony was not hearsay because it was not offered to prove the truth of the matter asserted. Rather, his statement was non-hearsay because it was offered to explain why, having received this information, that Officer Johnson began his investigation. Therefore, we conclude that Officer Johnson's statements were admissible. See State v. Smith, 400 So.2d 587 (La.1981), citing, State v. Turner, 392 So.2d 436 (La.1980); State v. Bazile, 386 So.2d 349 (La.1980). See also State v. Williams, 591 So.2d 404 (La.App. 4 Cir.1991). Therefore, we find that this pro-se assignment of error is without merit.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The facts are more fully discussed in the analysis of the defendant's first assignment of error concerning his motion to suppress the evidence.
[2] Officer Christopher Ryder testified only at the trial. Officer R.K. Johnson testified at both the motion to suppress hearing and at the trial.
[3] Bobby Dixon only testified at the motion to suppress hearing. Defendant only testified at trial. The other defense witnesses testified at both the motion to suppress and at trial.
[4] La.R.S. 15:501 states:

A. The party seeking to introduce a certificate made in accordance with R.S. 15:499 shall, not less than ten days prior to the commencement of the trial, give written notice of intent to offer proof by certificate. Such notice shall include a copy of the certificate.
B. (1) The party against whom such certificate is offered shall be permitted to subpoena on cross-examination, the person who performed the examination or analysis of the evidence. If the subpoena is requested at least five days prior to the commencement of trial or the person subpoenaed responds to the subpoena, the certificate shall not be prima facie proof of its contents or of proper custody.
(2) When the attorney for the defendant, or the defendant acting in his own defense, requests that a subpoena issue to the person who performed the examination or analysis, the request shall be in writing and shall contain a certification that the attorney or the defendant intends in good faith to conduct the cross-examination.